## WILLIAM C. HILL v. ABRAM MATHEWS.

*Contract—Construction—Lack of complete performance by plaintiff*
*—Assumpsit—General issue—Election—Laches.*

Plaintiff transferred to defendant certain land warrants, at $20 per acre, and agreed to use his whole influence and legal ability in securing the location of certain lands thereunder, the application for such entries being contested in the General Land Office, at Washington. In consideration of such services, if successful, he was to receive a deed of an undivided one-eighth interest in the lands when patented to defendant, and if unsuccessful was to receive back the warrants sold defendant, if he so elected, at the same price he sold them for. The contract further provided that a failure to secure patents for the lands should estop plaintiff from demanding compensation for his services in trying to procure such patents. The applications were rejected in April, 1886, and in December, 1886, the defendant sold the warrants at $55 per acre. In July, 1887, plaintiff made a formal demand for the warrants, and a tender of the $20 per acre was waived, and the demand refused, whereupon plaintiff brought suit upon the contract, counting upon the failure of the defendant to return the warrants, at $20 per acre, and recovered a judgment for $35 per acre, the trial court holding the contract *divisible*, and that the delay of the plaintiff to make an election under the contract to receive the scrip was excused by the action of the defendant in disposing of the warrants. In reversing the judgment the Court hold:

1. The contract must be construed as a whole, and the services of the plaintiff in procuring the location of the land were a condition precedent to the return of the warrants.

2. The title to the warrants passed to the defendant when he made his purchase, and his contract for a resale is executory; and when a promise rests upon two things to be performed for its consideration, and the promisee desires to enforce it, he can only do so after such performance.

3. From the facts disclosed in the testimony, there was a question as to what services plaintiff rendered for the defendant before the land department that should have been submitted to the jury.

4. Assuming the Commissioner of the Land Office to be the highest

authority having jurisdiction in the matter, the plaintiff should have made his election *at once*, and notified the defendant; and a fair construction of the contract required such election and notice to have been made and given within a very few days, at most, after the decision of the Commissioner.

5. It was of no consequence what defendant had done with the warrants; he should have had an opportunity to have returned them, or to have replaced them with other like scrip.

Error to Marquette. (Grant, J.) Argued October 29, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*F. O. Clark,* for appellant, contended:

1. In support of the claim that evidence of the non-performance of the contract by the plaintiff was admissible under the general issue, and that such non-performance was a complete defense to plaintiff's claim, counsel cited: *Allen v. McKibben,* 5 Mich. 454; *Ingalls v. Eaton,* 25 Id. 32; *Wilson v. Wagar,* 26 Id. 462; *Platt v. Brand,* Id. 175; *Stewart v. Ashley,* 34 Id. 183; *Peck v. Houghtaling,* 35 Id. 127; *Berringer v. Iron Co.,* 41 Id. 305.

2. The universal rule of construction of contracts is that they shall be read and construed together in all of their parts, and so construed as to express the intention of the parties as discovered from all of such portions; citing *Knower v. Emerson,* 9 Pick. 422; *Haywood v. Perrin,* 10 Id. 230; *Gray v. Clark,* 11 Ver. 583; *Harlow v. Iron Co.,* 36 Mich. 105, 117.

*A. B. Eldredge,* for plaintiff, cited no authorities.

SHERWOOD, C. J. This action is in *assumpsit,* brought by the plaintiff to recover damages of the defendant for his alleged violation of a written contract, dated March 21, 1882.

The plaintiff is a Washington lawyer, residing in the District of Columbia. The defendant resides at Marquette, Michigan. The latter, at the date aforesaid, wished to procure some Porterfield land-warrants with

which to make entry of certain lands at the Marquette land-office, and also desired to. obtain the services of the plaintiff, in connection with said entries, in the contest that was expected to arise upon appeal from the register and receiver of the Marquette land-office to the General Land-office at Washington; and the contract entered into between the parties provides that—

"Whereas, certain professional services will be required in the General Land-office at Washington, it is hereby agreed between the said Abram Mathews and W. C. Hill, of Washington, D. C., that in consideration of said W. C. Hill having furnished three certain Porterfield warrants, above referred to, at twenty dollars ($20) per acre, he shall, if he so elects, be permitted to receive the same back upon the payment to the said Abram Mathews of the sum of twenty dollars per acre in the event of said application being rejected and refused by the highest authority having jurisdiction over such matters.

"It is hereby further agreed that in consideration of an undivided one-eighth interest in and to the above described lands, conditioned upon the title thereto eventually vesting in the said Abram Mathews from the United States, the said W. C. Hill will, at his own expense, use his whole influence and legal ability in the direction of forcing the aforesaid applications to a successful issue, and, if possible for him to do so, to secure patents from the United States for the aforesaid lands, all or in part, in the name of the said Abram Mathews.

"In consideration of such influence and legal assistance, the said Abram Mathews hereby agrees, upon receipt of patents from the United States covering the lands aforesaid, or any portion thereof, to deed to the said W. C. Hill an undivided one-eighth interest in and to such parcels of the said lands, and as title may vest in him from the United States, through the assistance and procurement of the said Hill.

"It is expressly understood and agreed by and between the parties hereto that, in the event of the failure of the said Hill to procure, or cause to be procured, patents from the United States to issue to and in the name of Abram Mathews, then he, the said W. C. Hill, is hereby estopped from demanding or securing any compensation for his services in trying to secure the said patents."

From an inspection of this contract it is very plain that the plaintiff was to be employed by the defendant as attorney in procuring the successful location of the lands in question, and was to use his best endeavors, as such attorney, for that purpose. The duty and obligation which the plaintiff assumed by the contract was to use his best endeavors and efforts and influence and legal ability in forcing a successful issue; and, upon doing that, if he failed in his efforts, he was to be allowed to buy the scrip back, at the same price ($20 an acre) as was paid him by the defendant; and if he won the case in the General Land-office he was to have one-eighth of the land itself. The plaintiff claims that he did appear before the land department at Washington, and sought to obtain a favorable decision of the department against cash entry men, who had purchased of the government the lands described in the contract, and that he was employed in claims by homesteaders or actual settlers upon lands, where the same questions as in the Mathews case were involved, among which was, whether such lands were subject to purchase, and he preferred to press these cases as having greater equities than the scrip lands, and therefore did not urge the Mathews claim for settlement; that these circumstances excused the plaintiff from pressing defendant's claim; that on May 20, 1885, defendant wrote plaintiff the following letter:

" *Dear Sir:* Referring to the matter of the Porterfield scrip filings, I write to enquire what your views are in regard to continuing the scrip upon the land covered. If it is your wish and intention to continue the filings, as I can see no end to the fight, I should like to dispose of my interest in the scrip. I presume you can readily suggest some means of relieving me. I am the party to the record in the filings, but this need not stand in the way of my getting out. I would like to hear from you in the premises at your convenience."

To this letter the plaintiff made the following reply:

"*Dear Sir:* The prospect of winning the Porterfield scrip locations I think was never so good as it is now. As to withdrawing the applications, that is a matter to be considered by the owners of the scrip. All I shall insist on with you is that, if they are withdrawn, the warrants, re-assigned in blank, shall be returned to me in accordance with terms of your agreement with me. Any sales you may make of your interest should be with such reservations as will enable you to do this, as of course I can hold no one else."

That on April 10, 1886, a decision in the land department, adverse to defendant's purchase of the scrip land, was made, and early in December following the defendant applied at the land-office for, and obtained, and immediately sold, the three pieces of Porterfield scrip, at $55 per acre; that in July, 1887, formal demand was made by plaintiff of defendant for the scrip, and tender was waived by defendant; that the demand was not complied with, and thereupon this suit was commenced to recover the interest claimed by plaintiff in the scrip; the declaration counting on the failure of the defendant to return the scrip, at $20 per acre. The plea was the general issue. Under the direction of the court, a verdict at $35 an acre, amounting to $4,545, was given for the plaintiff. Defendant asks a review in this Court.

It was the contention of the defendant upon the trial at the circuit, and it is the contention of his counsel here, that the plaintiff failed to give any proper attention to the defendant's case in the General Land-office, but turned it over entirely to another, to look after, so far as it was looked after, without the consent of the defendant; that the plaintiff had agreed, and that it was a part of the contract upon which plaintiff's suit was brought, that the defendant should have his personal services and his personal influence before the Commissioner of the General Land-office, and this he never had. Defendant further claims that the plaintiff failed to faithfully per-

form his agreement under the contract to prosecute the case before the General Land-office, and, having failed himself to perform all the agreements on his part, he cannot hold the defendant liable for damages for failing to perform the other conditions of the contract; that the title to the Porterfield scrip had passed from the plaintiff to the defendant by purchase at $20 per acre, and could only be recovered back by plaintiff for the price at which it had been sold, upon the plaintiff's performing faithfully the conditions of the contract, and even then only upon service upon the defendant of a notice of election to buy back the said scrip, and tendering back the money, and this election and tender were to be upon the rejection and refusal by the highest authority to permit the location of said land; that the right of election and tender of money to buy back this scrip involved reasonably prompt action in so electing, after such rejection by the highest authority, and a delay in making such election and notice of election, as claimed in the declaration, and shown by the evidence, was not reasonable, and the defendant was not bound under the contract to hold his money tied up in this scrip; that plaintiff did not prosecute the defendant's case until it "should be rejected and refused by the highest authority having jurisdiction over such matters," and the right to buy the scrip depended on this.

Such were the theories of the respective parties, and upon these was the case tried at the circuit. The circuit judge, in his charge to the jury, adopted the views of counsel for plaintiff. In his charge, in speaking of the contract between these parties, he said:

"1. Was it such an agreement that, if Hill was negligent in prosecuting those claims before the department, he had no right whatever under this contract? Or is it the natural inference from that contract that, if he did fail, the defendant, Mathews, should have damages for the

failure to perform the contract on the part of Hill? While it is a matter not entirely free from doubt, I think it is clear that the reasonable construction is that the contract was divisible, and that Hill was entitled to receive back the Porterfield scrip upon the failure of the department to ratify the entries. Any other inference to be drawn from that, would, in my judgment, give the contract a construction which it is not fair to suppose the parties intended.

"They agreed upon a price at which, under certain contingencies, the defendant was to return it to the plaintiff Hill. That condition has arisen, and it is not, in my judgment, a defense in this action, on the part of the defendant, to show that the plaintiff failed to do his duty in the department at Washington.

"There being no notice of this kind, it seems to me clear that the defendant cannot, under the general issue set that up, and show a defense under the general issue—set that up, and show a defense under the particular terms of this contract—that the plaintiff cannot recover, because he did not do what he agreed to do in the exercise of his influence and legal ability in the department at Washington.

"There is no attempt on his part to show that he has been damaged in any respect. There was no notice in any respect in this case attached to the plea that the plaintiff had failed to perform his part of the contract, and that the defendant would seek to recover damages on account of the failure to perform. That plea being in the case, there would be a chance for this to be shown between these parties."

Upon the question of diligence the court said:

"5. The next question is the claim on the part of the defendant that the plaintiff must fail because he did not use due diligence in election. Under this contract, he was bound to elect within a reasonable time. This, of course, must be under all the circumstances of the case; and if the defendant had not sold this scrip at the time he did, and if Mr. Hill had done nothing up to July, 1887, there would be a good deal of doubt in my mind as to whether Hill had performed within a reasonable time; but we must take into account all the circumstances bearing upon this question, and we have, on May 20, 1885, the letter written by Mr. Mathews to Mr. Hill, and

the reply of Mr. Hill, dated May 23, 1885. Now it is important to consider the situation at that time. It is evident that Mr. Mathews decided in his own mind at that time that Mr. Hill had failed to carry out his agreement. He so stated, in substance, when demand was made of him in July, 1887. Then what object could there have been in demanding the scrip back, or in tendering the money?

"6. By virtue of the sale, the reason for a demand, in my judgment, had gone. The reason for a tender had gone when Mr. Mathews had disposed of that scrip, and Mr. Hill might have begun suit upon that, if he knew of the fact of the sale, without any demand, or any offer to tender the money, or any tender of the $20. Under the circumstances of the case, gentlemen, I do not think that laches can be imputed to the plaintiff, Hill, in not electing, It is certainly clear that the defendant has not been injured by it, unless it be upon the ground that he might purchase the stock [scrip]; but that, in my judgment, would have—other stock [scrip] might fill the place of this—but that, in my judgment, would have no bearing on the question. He disposed of the stock [scrip], claiming the right to dispose of it, denying Mr. Hill's right to it in any way or manner; and, therefore, standing in that position, his rights, and the rights of the plaintiff, were then and there determined."

As to the question of damages the court said:

"7. As to the measure of damages, that is the difference between the $20 paid and the $55 for which it was sold, with interest from the time the tender or waiver was made on the part of the defendant."

These seven paragraphs of the charge were all excepted to by defendant's counsel.

In construing the contract it must be taken as a whole. Its separate parts cannot be taken as so many different agreements, and each considered by itself. No one is able to say that one part would have been made if the other had not been. There is no reason for believing that defendant would have purchased the scrip had not the plaintiff promised his individual services, to the best of his ability and influence, to locate it on the land

stated in the contract. Nor can we say that defendant, after making the purchase of scrip, would have given the plaintiff an option to buy it back, only upon the condition that plaintiff would exert himself in persuading the commissioner to allow the land designated in the contract under it. This being so, the services of the plaintiff in procuring the location of the scrip desired became a condition precedent to a return of the scrip by the defendant to the plaintiff; and no such services having been proved, and none ever having been rendered, it would seem difficult to maintain the present suit, and I do not think it can properly be done.

There is no question, and I think there can be none, but that the title to the scrip passed to the defendant when he made his purchase, and his contract is executory, so far as he agreed to resell to the plaintiff; and when a promise rests upon two things to be performed for its consideration, and the party to whom the promise is made desires to enforce it, he can only do so after both things have been done. The action in this case is for a breach of the defendant's contract with plaintiff, and not for the value of the scrip. If there is no breach, there are no damages to be recovered; and if the failure to perform on the part of defendant is in consequence of the violation on the part of the plaintiff, then plaintiff must fail to recover. If the plaintiff's claim involves a question of fact about which there is testimony upon both sides, then the case should have gone to the jury.

Under the view I have taken of this case, and from the facts disclosed in the testimony, there was a question as to what the plaintiff did do for the defendant before the said land department that should have been submitted to the jury, which was not done by the circuit judge.

There may be a question whether the applications men-

78 MICH.—25.

tioned in the contract were ever rejected or refused by the highest authority having jurisdiction in such matters; but suppose the decision of the Commissioner in the land-office to be such authority, the plaintiff should have made his election at once what he wished to do, and have notified the defendant. I think a fair construction of the contract on this point required such election to have been made and notice to have been given within a very few days, at most. It was not given, however, for several months after the commissioner had announced his refusal to make the application. The delay was clearly unreasonable. It was of no consequence what the defendant had done with the scrip; he should have had an opportunity to have returned it, or replaced it by other like scrip, and this he did not have.

For the foregoing reasons I think the judge erred, and that the judgment should be reversed, and a new trial granted.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. LONG, J., did not sit.