GREENWOOD *v.* DAVIS.[1]

1. LOGGING CONTRACT—TIME FOR PERFORMANCE—QUESTION FOR JURY.

Where a logging contract specifies no time within which it is to be performed, a reasonable time will be implied; and unless the means of determining what would be a reasonable time are afforded by the contract, or the circumstances surrounding the transaction are undisputed or conclusively proved, the question is one for the jury.

2. SAME—ABANDONMENT OF CONTRACT.

Plaintiff contracted on November 30th to cut and haul certain logs for defendant. Payments were to be made as the work progressed, the final amount being payable when the work should be completed and camps broken up. No time was fixed for the performance of the contract. Plaintiff began work December 8th. On February 28th, having hauled all of the timber that he had cut, amounting to about one-third of that which was within the terms of the contract, he stopped work, owing to the depth of the snow, and broke up his camp, although defendant offered him an additional sum to continue operations. On October 1st following, plaintiff called for a statement of his account, and offered to resume work under the contract, but defendant refused to permit it, and plaintiff sued for breach of the contract. Testimony was introduced upon the trial tending to show that defend-

[1] Rehearing denied October 1, 1895.

ant owned a mill, and relied upon the logs in question to supply it with work during the summer; that hauling can be profitably done on snow only; that it is well to begin cutting in September; and also showing generally the usual seasons and methods of lumbering. *Held*, that it was for the jury to say whether plaintiff had abandoned the contract, and, if he had not, whether he offered to perform it within a reasonable time; the inferences from the evidence not being so plain as to justify the court in determining the question.

3. SAME—ESTOPPEL.

Plaintiff was not estopped to deny an abandonment by reason of the fact that defendant had sent his own men to cut the remaining timber prior to October 1st, since plaintiff may not have had reason to suppose that defendant would do this without first attempting to ascertain plaintiff's intentions.

4. BREACH OF CONTRACT—RECOUPMENT—INSTRUCTIONS.

Where, upon the trial of an action for breach of contract, the defendant has stated that he will ask no verdict against the plaintiff under his notice of recoupment, but only that his damages be allowed to an amount sufficient to offset any damages to which plaintiff may be entitled, a statement that "defendant seems to have waived his claim for damages," made in the course of the instructions to the jury, is not prejudicial to the defendant, where the jury are further explicitly instructed that plaintiff cannot recover if he himself has broken the contract.

5. LOGGING CONTRACT—BREACH—LOSS OF PROFITS.

In an action for the refusal to permit plaintiff to perform a contract whereby he was to cut and haul timber for the defendant, the measure of damages is the difference between the contract price and the cost of doing the work; and the fact that such cost would depend upon the season and the management of the business, while proper to be considered by the jury, does not render the profits so conjectural and speculative as to prevent the application of the rule.

Error to Delta; Stone, J. Submitted June 6, 1895. Decided July 9, 1895.

*Assumpsit* by Alfred Greenwood against Charles W. Davis and Richard Mason for the breach of a logging

contract. From a judgment for plaintiff, defendants bring error. Affirmed.

*Mead & Jennings,* for appellants.

*Sawyer, Waite & Waite,* for appellee.

HOOKER, J. On November 30, 1892, the parties made a written contract, by which the plaintiff agreed to cut logs for the defendants. He began work December 8th, and stopped on February 28th, after cutting about one-third of the timber agreed upon. In the fall of 1893 he expressed an intention of resuming operations, but defendants declined to allow it, and cut the logs themselves. Plaintiff then brought this action, claiming damages for a breach of the contract, and defendants bring error upon a judgment for plaintiff of $500.

The first and most important question arises upon the refusal of the trial court to direct a verdict for the defendants. This involves a construction of the contract, which counsel for the defendants say was for the court, whereas the court left it to the jury. The contract was as follows:

"Said Greenwood agrees to cut, haul, and bank     *     *     * all pine timber now being on [here follows a description of the lands], for the price of five dollars and fifty cents per M. ft., board measure, by Scribner rule. Payments are to be made by said Davis & Mason on the last day of each month, at the rate of two dollars per M. ft. for all logs then skidded, and at the rate of one dollar and fifty cents more per M. ft. for all logs then banked on landings,—that is to say, three dollars and fifty cents per M. for all logs then so banked,—and when the work is completed, and camps broken up, Davis & Mason agree to pay in full at the above price per M. ft.     *     *     * Said Greenwood to provide Davis & Mason with full release for all labor employed by him, to avoid labor liens."

The contract fixed no time within which the labor was to be performed, and, under elementary principles, the circuit judge was correct in holding that the plaintiff was

entitled to a reasonable time for cutting and hauling the logs. It is obvious that the contract does not contain the means of determining what would be a reasonable time, and unless the circumstances surrounding the transaction are undisputed, or conclusively proved, no error was committed in allowing the jury to pass upon that question; and the same can be said of the question whether the plaintiff abandoned the contract.

The record shows beyond controversy that the defendants were the owners of a mill, and relied upon the logs to supply it with work during the summer; that, in consequence of the failure to obtain them, the mill was idle during a portion of the season. It seems undisputed that the plaintiff finished hauling the logs that he had cut and skidded (except a very few) before February 28th, and that he then stopped work and broke up his camp, intending to do no more before the next fall (if at all); and that, as soon as the defendants heard of it, they offered him fifty cents per thousand additional to continue, but that he said that he could not pay expenses, owing to the depth of the snow, and refused to comply with the request. He drew checks to pay his men, which were paid by the defendants. He did nothing more until October 1st, when he called for a statement of his account, and intimated an intention or willingness to begin work again; but the defendants told him that they did not want any more to do with him, as he had not kept his agreement. On October 30th he wrote a letter offering to go to work. Defendant Mason testified that their men were in the woods at work, before the conversation of October 1st, and there is no evidence to the contrary. The record shows nothing to indicate that plaintiff communicated an intention to finish the following winter, either at the time he quit work, or at any other time before October 1st; and, on that occasion, there is nothing to show that he protested when he was told that they would not permit him to finish the job, or that he had at that time taken, or did afterwards take, any measures to begin work.

The testimony shows that this work cannot well be done during the summer until after fly time; that it is well to begin work in September, to get cutting done before snow falls; and that the hauling can be profitably done only upon snow. Hauling could have been done upon snow through most, if not all, of March, 1893, but there were no logs cut. There was testimony in the case showing the usual seasons and methods of lumbering, and plaintiff testifies that Mr. Brown had supervision of his camp and cutting for the defendants. If this is true, the defendants probably knew that the plaintiff's logging operations were not progressing in a way to promise complete performance of the contract before the season for hauling should be over, and this tends towards the inference that they were satisfied to have the plaintiff take the second season to complete it. Again, as to abandonment of the job, we cannot say that it is conclusively shown, in the face of the testimony of the plaintiff, that he intended to abandon the job. He had a balance coming to him, and the first time that he asked for it he signified an intention of completing his job. No surprise was expressed by the defendants at this, nor was he told that they supposed he had abandoned it, and that in reliance upon that understanding they had sent their own men to cut the timber. We think that both of these were questions for the jury, and that the inferences from this evidence are not so plain as to justify the court in saying that the plaintiff abandoned the contract, or that it was to be performed only by continuous work.

The brief filed by counsel for the defendants raises the question of estoppel. It does not show that it was raised upon the trial; but, if it did, we cannot say that the plaintiff had reason to suppose that the defendants would commence work before October 1st without an attempt to ascertain plaintiff's intentions. We think the intentions of the plaintiff were material, as they bear upon the question of abandonment, though they might

not be conclusive upon that of estoppel, if all of the elements of an estoppel were present..

Defendants gave notice of recoupment. This was based upon the claim that the plaintiff abandoned the contract. On the trial, they asked no verdict against the plaintiff, but only that their damages be allowed to an amount sufficient to offset any damages that the plaintiff might be entitled to. After instructing the jury as to the right to recoup, the court added: "But all this, perhaps, will not be necessary, as the defendants seem to have waived their claim for damages on their part." This remark followed a full discussion of the defendant's right to recoup, of which they cannot reasonably complain, and was apparently intended to apply to the earnings of the mill as a measure of damages. There could be no recoupment unless the jury found that the plaintiff broke the contract; and, as the court explicitly instructed the jury that he could not recover any sum if he did so, there was no occasion to discuss the question of recoupment after defendants had signified their intention to ask no affirmative relief.

It is further contended that the damages were speculative, especially in the light of the statement that plaintiff lost money the first season by reason of the deep snow. There was testimony tending to show that the work could have been done for $3.50 to $4 per thousand feet, and the difference between that sum and the contract price was claimed to be the measure of damages. This is the usual rule, *Mueller* v. *Mineral Spring Co.*, 88 Mich. 390. In other words, the plaintiff would be entitled to the contract price, less the cost of doing the work, which cost was susceptible of proof by the evidence of experts acquainted with the business and the cost of such work. This is admitted to be the general rule; but it is said that the court should have found the profits conjectural, uncertain, and contingent, and therefore not a proper basis of recovery. This claim is based upon the evidence that the cost of such work would depend upon

the management and the season, which is said to have been bad. These were proper subjects to be considered by the jury; but, unless we are to call profits conjectural and speculative whenever a defendant can show any element of uncertainty, we cannot accede to the suggestion that the court should have disposed of the question. Profits were anticipated as the natural result of the contract. Such profits can be determined by deducting the cost from the contract price, and we think that the cost was susceptible of proof with reasonable certainty. *Leonard* v. *Beaudry*, 68 Mich. 320; *Atkinson* v. *Morse*, 63 Mich. 276.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.