## HULSE *v.* MICHIGAN SUGAR CO.

1. CONTRACTS — SALES—BREACH—CONSTRUCTION OF INSTRUMENT—BEET SUGAR CONTRACT.

Plaintiff brought an action for breach of contract upon a special agreement with the defendant sugar company providing that plaintiff should grow and deliver during the season of 1911 five acres of sugar beets, the contract also containing the provision that "said beets shall be harvested and loaded by the grower for the company on cars or delivered at factory sheds at such time and in such quantities as may be directed by the company, allowing each grower his pro rata amount." Plaintiff's evidence tended to establish his readiness to perform the contract during the campaign and that defendant refused or neglected to carry out its part of the agreement by declining to receive certain beets, which plaintiff offered to deliver in unfit condition for making sugar. *Held,* that the contract was not ambiguous, that it reserved to the defendant the right to receive from various growers such portion of the beets from time to time as was equitable; also, that the contract by its express provisions determined the time for delivery and that no question for the jury as to reasonable time arose under its terms.

2. SAME—TIME—REASONABLE TIME—INTERPRETATION.

Considering the contract in the light of surrounding circumstances and of the subject-matter to which it related, as is the ordinary method and rule of legal construction, defendant sugar company was required to receive plaintiff's crop during its campaign, the duty to protect and cover the beets resting upon plaintiff, and defendant was liable for failure to accept sound beets grown as provided during the season although the company was authorized to regulate the amount to be delivered proportionately among the growers as the campaign progressed. There was no duty to pay for decayed or spoiled beets on the part of defendant.

MOORE, J., dissenting.

Error to Clinton; Searle, J. Submitted November 16, 1914. (Docket No. 82.) Decided June 7, 1915.

Assumpsit by Roy Hulse against the Michigan Sugar Company for breach of a special contract. Judgment for plaintiff. Defendant brings error. Reversed.

*William A. Bahlke* and *Warren, Cady, Ladd & Hill,* for appellant.

*Lyon & Moinet,* for appellee.

MOORE, J. (*dissenting*). From a judgment in favor of the plaintiff for the sum of $300, the case is brought here by writ of error. The plaintiff sued to recover damages for defendant's refusal to receive sugar beets grown during the season of 1911 for its sugar campaign of 1911-12. These beets were grown in pursuance of two written contracts. The plaintiff's declaration was on the common counts in assumpsit and a special count upon each of the contracts. It is alleged the defendant refused to receive the beets after they were grown and ready for delivery "in violation of the terms and conditions of said agreement and in violation of the duty of said defendant to receive said beets in season and within a reasonable time after the same were harvested and ready for delivery." The defendant pleaded the general issue and gave notice that it would set off against the plaintiff's claim certain items. It also gave notice of recoupment for breach of the contracts, upon which suit was brought.

The parts of the contract material to this issue read:

"The undersigned hereby agrees to plant, cultivate, harvest and deliver during the year commencing with the spring of 1911, to the Michigan Sugar Company (Alma Plant) at its factory in Alma, Michigan, 5

acres of sugar beets on the following described lands.
* * *

"The beets are to be given due care, and as far as practicable the grower will follow instructions in regard to preparing the soil, seeding, caring for and harvesting the crop.

"For beets delivered at the factory under this contract the company will pay at the rate of four dollars and fifty cents per ton for beets testing 12 per cent. sugar, and 33 1/3 cents per ton additional for each per cent. above 12 per cent., subject to tare for dirt and improper topping.

"The grower is guaranteed to receive not less than five dollars per ton net for beets delivered at the railway station or factory sheds, and if according to the test and the terms of the contract, the beets are worth more, he shall be paid such excess. * * *

"Said beets shall be harvested and loaded by the grower for the company on cars or delivered at factory sheds, at such time and in such quantities as may be directed by the company, allowing each grower his pro rata amount. The company will not be liable to receive or pay for beets which are rotten or otherwise unfit or undesirable for making sugar.

"An additional price of 50 cents per ton will be paid by the company for beets delivered after December 1st."

Upon the back of said contract were the following words:

"Michigan Sugar Company, Alma Plant, Sugar Beet Contract with Roy Hulse; * * * Loading Station, Bannister.

"Remarks and Instructions: Always select the best land for sugar beets. Plow your land in the fall, if possible; get down deep with your plow and put your land in the best condition possible. * * * Do not harvest until beets are ripe. Beets should be topped square below lowest leaf growth."

Upon the trial of the case there was no dispute as to the amount of beets actually delivered under the contracts, the price, or the total advances made by the defendant. These debits and credits were tabu-

lated. This statement shows the plaintiff owed the defendant on account of said transaction a balance of $174.93. The plaintiff delivered to defendant ten wagon loads of beets which, after being credited to him, left his account standing as an indebtedness of $174.93 as above stated. This amount the defendant waived the right to recover without regard to the issue as presented by the court to the jury.

It is the claim of plaintiff that he grew an exceptionally good crop of beets; that he was notified to commence lifting them early in October; that he did so, and, after the crop was nearly all gathered, began drawing them to Bannister December 6th, and after drawing two loads he was directed by the agent at Bannister not to bring any more until he was notified; that he persisted in his efforts to draw his beets; and that between December 6th and December 26th he was permitted to draw but two loads, although after the 6th of December he was prepared to deliver his beets at Bannister. It is his claim that, when he delivered the load on December 26th, he was again notified by the agent to bring no more until notified; that his beets were then in good condition; and that he was then prepared to deliver them and desired to do so. His further claim is that, though he received no notice, he drew another load January 11th, and that his beets were then all right, and that he was then prepared to deliver the rest of his beets; that at this time he was again notified not to bring any more until further notice; and that no further notice was given.

The record discloses plaintiff had a supplemental contract with defendant to furnish laborers to care for the crop during its period of growth and during the harvesting. It is claimed the beets as they were harvested were piled and covered with leaves, and that Mr. Sebring, representative of the company, was

consulted about the manner in which this was done, and that it had his approval. It is the claim that because of the delay and the refusal of the company to receive the beets they spoiled.

Plaintiff prosecuted his suit upon the theory that he had performed and tendered performance of his part of the contracts, and that the defendant was liable because it refused to receive the beets in accordance with the provisions of the contract, in a reasonable time after the crop was ready for delivery; there being no time of delivery specified in the contracts.

At the conclusion of the case made by the plaintiff, a request for a directed verdict in favor of defendant was made and overruled. At the conclusion of all the evidence, defendant presented many requests to charge, some of which asked for a directed verdict. The case was submitted to a jury under a charge the material parts of which, so far as relate to the assignments of error, are as follows:

"Now, gentlemen, it was the duty of the plaintiff, under these contracts which you have heard read to you here, to do and perform certain things, and I instruct you, as requested by the defendant's counsel, that under the contract relations existing between the plaintiff and defendant it was the duty of the plaintiff to plant, cultivate, harvest, and deliver  *  *  *  on cars, or at such places as the defendant company should designate at the Bannister weigh-station of the Alma plant of the defendant company, with due care, ten acres of sugar beets during the season of 1911 and the manufacturing campaign of 1911-12 of the Alma plant of the defendant company.  *  *  *

"I also charge you in that connection, as requested by defendant's counsel in his twenty-second request, that under the contracts sued upon, the instructions of the company in regard to preparing the soil, seeding, caring for and harvesting the crop, as well as the instructions written upon the back of the contract, were advisory and did not, except as to the time when such beets should be harvested and the time and quantities that the same should be delivered to the

company, * * * release the plaintiff from the contract duty and obligation to plant, cultivate, harvest and deliver during the season of 1911 and the sugar campaign of 1911-12, with due care, the ten acres of beets in question to be grown under said contract. * * *

"Now it was the duty of the defendant company, under their contract, to give notice to the plaintiff here when to harvest his beets. It was their duty to give notice to him when to deliver his beets. It was their duty to receive the beets in reasonable times and under reasonable regulations and during the season for the delivery of beets that year. What I mean by that is this, during the ordinary season that beets could be marketed and sent to the factory and made into sugar. You have heard the remark about there being a campaign a certain period of time when the factory was running, and I suppose it is a matter of common knowledge, if it is not shown by the evidence here, that beets are delivered up to a certain time in the winter before it would ordinarily thaw up in the spring, and they are made into sugar that year. It is a matter of common knowledge, and you can take notice of the fact, that it is a perishable product and could not be kept over, and, when I say that it is the duty of the company to receive these beets in due and reasonable season, I mean within the season where they could be handled before they would ordinarily spoil on account of the spring weather coming on. * * *

"I have told you in a general way what are the duties of the respective parties under this contract. If I have not already said it, I will say it again, that there is no dispute but what the defendant did give notice at some time to Hulse, the old gentleman, who was agent for his son, the plaintiff here, to go to lifting these beets, that it was time to harvest them. There is a dispute between the parties as to what time that notice was given. That will be a matter for you to determine. After he received that notice, it was his duty to proceed to lift the beets and keep ahead of the workmen that were sent there to finish the harvesting. * * *

"Now the plaintiff claims that there came a time when he was stopped from drawing beets, said he was

notified not to draw any more until the company should send him word or notify him to commence drawing again. I instruct you that if you find that the plaintiff has shown that by a preponderance of the evidence, under the instructions I have given you, then he was not in duty bound to commence drawing again until he did receive notice. But perhaps I ought to qualify that to this extent, that if he understood generally by the farmers, seeing other farmers drawing beets, that the place was open, that the station was open, and that they were receiving beets again, then it would be his duty to go to drawing or to make inquiry and see if he could go to drawing, even though he had not had notice from them; in other words, no matter how the notice got to him, whether it came direct from the company or whether it came indirectly from the farmers that the station was open, it would be his duty then to go to drawing again if he had the opportunity to do so from the company.

"The defendant company claims that they did not tell him that they would send him notice again; that it was his duty to find out when they were going to commence again. * * * If they are right about that, it would be his duty to find out when they were open and go to drawing again.

"I charge you as a matter of law that, if both parties kept and performed the contract and performed the duties enjoined upon them under the instructions I have given you here, then the loss because of the beets spoiling and rotting would fall upon the plaintiff and he cannot recover. In other words, the plaintiff took the chances of the ordinary freezing and thawing of these beets and their rotting, providing the defendant did and performed all of its duties. And if you find that the defendant kept and performed its contract and duties and plaintiff was at fault in not performing his part, then the plaintiff cannot recover. But, if the plaintiff kept and performed his contract and his duties thereunder and was prevented from delivering his beets by the refusal of the defendant to take them in the manner in which I have instructed you that they should take them, then the plaintiff can recover to the extent that you find under the evidence the amount that he would have received for marketable beets under the contract less the expense of mar-

keting the same. When I use the expression marketable beets under the contract, I mean beets which would have been taken under the conditions of this contract. You will remember that the contract provides that the company are not to take beets which are rotten or otherwise unfit or undesirable for making sugar. In computing what the plaintiff would be entitled to recover here, you are limited to such, providing you find under the evidence here and the instructions I have given you, that the company did refuse to take the beets, and that refusal was unreasonable under the instructions I have given you and shall give you, then in determining how much the plaintiff should recover on that account, you must charge the company only with so much of those beets that were not delivered as would have come under the contract had they been delivered. * * *

"The plaintiff can only recover for such beets as you find under the evidence he would have delivered in marketable condition under the contract. * * *

"I mean by that, that the company would not be obliged to take rotten beets, or beets not fit to make sugar of, and this rule must be applied in determining the damages where they refused to take, if you find they did.

"And in determining that question you consider all the evidence in the case as to the condition of the weather and of the beets, and determine to the best of your judgment what amount he would have received for marketable beets, providing he had not been prevented from delivering them. And you must remember to deduct the cost of hauling of the beets, because, he not having hauled them, he cannot recover for that work. * * *

"It is not for the court to say to you how long the defendant company might close its station at Bannister for the purpose of receiving beets. I will say to you, however, that they would have a right to close it for a reasonable time. They would not be obliged to take beets every day from the time they opened the station. But it is a question for you to determine whether or not they acted reasonably with this plaintiff or not. I have already charged you it was their duty to take these beets within a reasonable time during the season. * * *

"At all times after the 1st day of December it was his duty to deliver the beets at such times as he was notified to do so by the company within a reasonable time thereafter—therefrom and thereafter, as fast as he could. If it was late in the season so that an ordinarily reasonable man would deem it necessary to hire other teams to deliver, then it would be his duty to hire other teams. He should do just what an ordinarily reasonable man would do under the circumstances after he was notified.    *    *    *

"It is for you to say whether or not these parties acted within the rules I have laid down here and acted reasonably and diligently. If the company did not close its factory for an unreasonable time and did give this plaintiff a reasonable opportunity to get his beets delivered, then he cannot recover. If they did not do that, and he performed his part and acted reasonably, and you find that he could have gotten the beets in before the end of the season, then to the extent that he would have delivered marketable beets there he is entitled to recover, under the instructions I have given you."

There are many assignments of error discussed, but there is one question that is controlling. This is recognized by counsel for appellant, who says in the brief:

"The seventh is the all-important paragraph of the contract and which must be construed and applied to the subject-matter of this suit."

I cannot state the contention of the appellant more concisely than to quote from the brief, as follows:

"The contract, however, was not silent as to the harvesting and delivery of the crop. In dealing with a large number of growers, it was seen that disputes and jealousies might arise between growers or between them and the company touching these matters. There was no one who could regulate or control this but the company. It was vital in the conduct of the business that the company should control the time of the harvest and delivery of the beets to the company. Who else could assure a timely harvest and an orderly and efficient handling of the crop? The grower, by

the seventh paragraph of the contract agreed that 'said beets shall be harvested and loaded by the grower for the company on cars or delivered at factory sheds at such times and in such quantities as may be directed by the company.' Then to assure the grower that such direction on the part of the company would not be abused, it provided, as a restriction on such power, that such deliveries should be directed by the company by 'allowing each grower his pro rata amount.' The same paragraph provided that 'the company should not be liable to receive or pay for beets, which are rotten or otherwise unfit or undesirable for making sugar.'

"It should be noted that the contract placed the entire work of producing and delivering the crop upon the plaintiff and he was to give the beets 'due care.' Until the beets were delivered to the company, the whole work of providing and caring for the crop was upon the grower.  *  *  *

"That the defendant by the contract is given the right to direct all deliveries of beets by the plaintiff, subject to the limitation that the plaintiff be permitted to deliver during the 1911-12 campaign, in point of time, being the season as described, such portion of his crop of beets as his tonnage of beets bore to the total tonnage of beets of the Alma plant for its 1911-12 campaign; that until his beets were so delivered to the company, the whole burden of their care and protection as against damage by the elements was the burden and duty of the plaintiff; and that the company possessed the right to reject all beets which were rotten or unsuitable for making sugar.  *  *  *

"Who can reasonably and logically contend that these parties did not agree and understand at whose direction and at what times these beets were to be delivered. Certainly it was to be upon the direction of the defendant and during the sugar campaign of the defendant of 1911-12. To drop this language from the contract and attempt to make this defendant accept beets from this plaintiff and all growers 'within a reasonable time,' under the circumstances and conditions surrounding their use by the company, simply means disorder and disaster to the business. It would result in a feast or a famine of beets as might suit the caprice or notion of 2,500 growers.

"These parties did not contract with any such illogical and unreasonable result. The contract contemplated co-operation and fair dealing with due regard to the interests and welfare of each other. The parties recognized the exigencies of the business and the nature of the industry and placed the question of directing the delivery of beets in the hands of the only party capable of determining when it should be done and in what amounts, during the campaign or 'season.' To supersede this understanding and agreement by the rule insisted upon by plaintiff's counsel and the rule which was given by the court to the jury puts this business of the defendant beyond its power of regulation and control."

In the conclusion of the supplemental brief counsel again state the position of defendant:

"This whole suit, in its last analysis, gets down to the simple question of whether this court will preserve to this defendant the right to direct the time of harvest and the time and amount of delivery of beets to the company by the grower. This was the contract right given to this defendant under this contract. If the pro rata clause of this contract is eliminated, we assert that we have the unlimited right and power to direct the time and quantities in which this plaintiff shall deliver his beets to us under this contract during the whole period covered by the campaign of 1911-12. That that time expired reasonably and seasonably in conformity with the contract, on the 17th day of February, 1912, and that at the end of that time, if the plaintiff had any beets which complied with the contract, we were required to pay for them whether we took them or did not take them; and that if he had beets which were rotten and unfit to make sugar we were not under contract obligations to take them. The great prejudice to the appellant upon this trial was and is that this right was not preserved to the defendant by the court. We were made liable for refusal to receive beets from time to time as tendered, when there was no proof that at such time we were under contract obligation to receive them."

The logic of this contention is, of course, that plain-

186 Mich.—39.

tiff, though authorized to harvest the beets when ripe, must hold himself in readiness to deliver them at any time after that when required by the defendant, but that defendant was under no obligation to take the beets until just prior to the end of the campaign February 17, 1912. Counsel say:

"It was vital in the conduct of the business that the company should control the time of the harvest and delivery of the beets to the company."

This argument ignores the fact that the business about which the contract was made was as much the business of the grower as it was of the receiver of the crop, and that it was also vital to him that he should be given an opportunity to deliver his crop after it was grown. The business of growing sugar beets for manufacture into sugar has grown to be of such importance in this State that the courts may well take judicial notice of some of the conditions surrounding the growing and the marketing of the crop.

The contract contemplates, and the interest of the grower would indicate, that the harvesting of the crop would not be commenced until it was ripe, and in this climate ordinarily this would be the latter part of September or early in October. The season for lifting the crop from the ground after that would be comparatively short if the beets were to be gathered before there was great danger of freezing them fast in the soil. We may also take notice that the sugar beet factories, though calling for a large investment of money, are idle the greater share of the year; the period of manufacture called the campaign commencing in the fall after a sufficient number of beets have been delivered to keep the factory in operation, the season ending when the supply of beets is manufactured, usually in January or prior to the middle of February. It may also be said that the labor condi-

tions are such that, if the average farmer is to deliver his crop during the campaign, he must be given an opportunity to commence doing so soon after the harvest commences, and be allowed to continue to do so in a reasonable way until the crop is marketed. We may also well take notice that the crop is not like a crop of wheat, beans, or many other products, one that may be carried a long time, irrespective of weather conditions, without harm. It is a perishable product and must be marketed within a reasonable time after it is harvested, or the labor and the investment of the grower will be a total loss.

It has already appeared that the contract is a short one. It does not go into details. We think it should be construed in the light of its subject-matter, and the circumstances and the situation of the parties to it. It was prepared by the company. If its terms are ambiguous, it must be most strongly construed against the company. There is no definite date fixed in the contract itself, when either party to it, by reading it, could say when the delivery should be commenced or ended.

In *Reinforced Concrete Pipe Co.* v. *Boyes,* 180 Mich. 609 (147 N. W. 577), Justice KUHN, speaking for the court, said:

"It is an elementary proposition of law that, where no time is specified in the contract for the completion of work, it must be done within a reasonable time. What is reasonable time usually depends upon the nature of the contract and the particular circumstances. Where facts are in dispute, it presents a question of fact for the jury. *Stange* v. *Wilson,* 17 Mich. 342; *Coon* v. *Spaulding,* 47 Mich. 162 (10 N. W. 183); *Hill* v. *Mathews,* 78 Mich. 377 (44 N. W. 286); *Greenwood* v. *Davis,* 106 Mich. 230 (64 N. W. 26)."

We conclude the learned trial judge properly charged the jury as to the law of the case.

The other assignments of error have been considered. We think it unnecessary to discuss them.

Judgment should be affirmed.

OSTRANDER, J. There is no ambiguity in the contract. Its enforcement according to its terms is a simple enough matter. It is when the court attempts to make a new contract, attempts to modify and amend it, or to permit a jury to determine how defendant should have conducted its business, that difficulty arises. It is difficult, in the face of the contract, to permit plaintiff, or any other beet grower, to recover pay for spoiled beets. It is obvious that the defendant could not have received all of the beets grown during the first week, or the first month, of the campaign. And only one of the beet growers could deliver the last load of beets. Defendant reserved the right to take some beets from each grower, which was equitable, and the grower agreed to the reservation. An increased price was to be paid for beets delivered after December 1st. Whether delivered early or late, the defendant was bound to receive only sound beets. The duty to preserve the beets for delivery was the duty of the grower. If he protected them, if he was in a position to deliver them and the campaign closed before they were delivered, he would be entitled to pay for them. If they were then spoiled, he would not be so entitled. This, it seems to me, is what the contract provides for.

The theory that there is involved any question of a reasonable time for delivery and acceptance of the beets is wholly unsupported by facts. The contract fixes a time in which all beets are to be delivered. In the opinion of Mr. Justice MOORE it is said, "There is no definite date fixed in the contract itself, when either party to it, by reading it, could say when the delivery should be commenced or ended," and this is

followed by reference to the elementary principle that, when no time is specified in the contract for the completion of work, it must be done within a reasonable time. But Mr. Justice MOORE also says the contract "should be construed in the light of its subject-matter, and the circumstances and the situation of the parties to it." Applying this rule, no difficulty is experienced in ascertaining the limits of the time for delivering beets, which are the limits of time, not alone for plaintiff, but for him and many hundreds of other beet growers, and, referring to the contract, we find it there provided that they shall be delivered at such time and in such quantities as may be directed by the company, allowing each grower his pro rata amount.

The learned counsel for plaintiff says, in the brief, that:

"The pro rata clause in the contract cuts no figure in this case for two reasons: (*a*) That provision is not specific enough so as to throw any light upon any question involved in the case; and (*b*) the time for the delivery and receipt of the beets not having been fixed by the terms of the contract, the plaintiff was bound to deliver and the defendant was bound to accept them in a reasonable time."

It seems plain that, as applied to a single grower of beets, any time within the limits fixed by the contract and by circumstances is a reasonable time. Because the labor and expense of protecting beets delivered early in the period may be saved to the grower, while those delivered later, or kept for delivery, may require protection, the pro rata clause may be important in a particular case. And this, not because defendant can be held to any nice computation of the amount of beets to be called for or received from each grower, but because it is possible that out of malice some growers might be greatly favored by an early delivery, from taking part in which others might be

wholly excluded. This theory of the meaning of the term in the contract does not, however, permit any grower to recover for beets lost because not protected, but may permit him to recover the additional expense, if any, occasioned by being obliged to care for beets which otherwise would require no protection. I cannot escape the conviction that under the contract the defendant was bound to pay for the beets which plaintiff raised and harvested and held himself ready to deliver in sound condition during the campaign; the duty to protect them being a duty of the grower.

It follows that the judgment must be reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, and STEERE, JJ., concurred with OSTRANDER, J.