LANSING ASSOCIATION OF SCHOOL ADMINISTRATORS v LANSING SCHOOL DISTRICT BOARD OF EDUCATION

BRADLEY v SARANAC COMMUNITY SCHOOLS BOARD OF EDUCATION

Docket Nos. 163316, 168371. Submitted October 11, 1995, at Lansing. Decided March 26, 1996, at 9:05 A.M. Leave to appeal sought.

The Lansing Association of School Administrators brought an action in the Ingham Circuit Court against the Lansing School District Board of Education and others, seeking to enjoin the defendants from complying with a request made by the Parent Support Network under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, for documents relating to the performance evaluations of certain principals and vice-principals. The court, Lawrence M. Glazer, J., denied injunctive relief, ruling that the documents were not exempt from disclosure under the FOIA that provisions in a collective bargaining agreement between the parties prohibiting the public disclosure of performance evaluations were void as being violative of public policy. The association appealed.

Christine E. Bradley, a teacher, brought an action in the Ionia Circuit Court against the Saranac Community Schools Board of Education and the Saranac Community School District, seeking to enjoin the defendants from complying with a request made under the FOIA by a parent of one of Bradley's students for documents relating to, inter alia, Bradley's performance evaluations and to disciplinary actions and complaints against her. The court, James K. Nichols, J., denied injunctive relief and ordered that redacted copies of the documents be provided to the parent who requested the documents. Bradley appealed. The appeals were consolidated.

Appeals *held:*

1. The personnel records at issue do not fall within exemptions from disclosure under the FOIA for information of a personal nature whose public disclosure would constitute a clearly unwarranted invasion of an individual's privacy, MCL 15.243(1)(a); MSA 15.243(1)(a), or for communications within a public body of an advisory nature and preliminary to a final agency determination of policy or action, MCL 15.243(1)(n); MSA 15.243(1)(n).

2. The disclosure of the requested personnel records does not constitute invasion of privacy inasmuch as disclosure would not lead to intrusion upon seclusion, public disclosure of embarrassing private facts, publicity that puts a person in a false light in the public eye, or appropriation of a person's name or likeness.

3. Public disclosure of the documents at issue does not implicate the constitutional right to privacy. The restrictions placed by the Fourteenth Amendment upon state action affecting personal liberty relates to liberties deeply rooted in this nation's history and tradition, i.e., neither liberty nor justice would exist if they were sacrificed. In these cases, liberty and justice will not cease to exist upon the failure to recognize a right of privacy concerning the records in dispute.

4. In providing the exemptions under the FOIA, the Legislature anticipated requests for personnel records of public employees and chose to exempt the personnel records of law enforcement agencies only.

5. No privilege applies to prevent disclosure of the records at issue.

6. The Ingham Circuit Court did not err in ruling that contractual provisions between the association and the Lansing School District that guarantee confidentiality of performance evaluations of school administrators are null and void. The school district may not eliminate its statutory obligations to the public in the collective bargaining agreement with the association.

Affirmed.

1. Statutes — Freedom of Information Act — Reversed foia Actions — Public Teachers and Administrators — Personnel Records.

The Freedom of Information Act did not create any right to prevent disclosure of the personnel records of public school teachers and administrators records; any asserted right by third parties to prohibit disclosure must have a basis independent of the Freedom of Information Act (MCL 15.231 *et seq.*; MSA 4.1801[1] *et seq.*).

2. Privacy — Invasion of Privacy — Intrusion Upon Seclusion — Disclosure Pursuant to Freedom of Information Act.

A written request pursuant to the Freedom of Information Act for disclosure of a record does not, as a matter of law, constitute an objectionable method of obtaining information and therefore cannot give rise to an action for invasion of privacy based on intrusion upon seclusion where the information is alleged to be private in nature (MCL 15.231 *et seq.*; MSA 4.1801[1] *et seq.*).

3. PRIVACY — INVASION OF PRIVACY — PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS.

In order to establish invasion of privacy on the basis of public disclosure of embarrassing private facts, a plaintiff must show that the disclosed information is highly offensive to a reasonable person and of no legitimate concern to the public; publicity involves a communication to so many persons that the matter is substantially certain to become public knowledge; it is not an invasion of the right to privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

4. CONSTITUTIONAL LAW — RIGHT OF PRIVACY.

The right of privacy founded in the Fourteenth Amendment concept of personal liberty and restriction upon state action is limited to those fundamental liberties deeply rooted in the nation's history and tradition such that neither liberty nor justice would exist if they were sacrificed (US Const, Am XIV).

5. STATUTES — FREEDOM OF INFORMATION ACT — COLLECTIVE BARGAINING AGREEMENTS — PERSONNEL RECORDS.

A provision in a collective bargaining agreement between a government agency and its employees that forbids the public disclosure of personnel records that are not exempt from disclosure under the Freedom of Information Act is void as being violative of public policy (MCL 15.231 *et seq.*; MSA 4.1801 *et seq.*).

*Hankins & Associates* (by *Dan E. Hankins* and *Jayne M. Flanigan*), for Lansing Association of School Administrators.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird*), for Christine E. Bradley.

*Thrun, Maatsch and Nordberg, P.C.* (by *James T. Maatsch* and *Philip A. Erickson*), for Lansing School District Board of Education, Lansing School District Superintendent, and Lansing School District Personnel Director/Associate Superintendent.

*Thrun, Naatsch and Nordberg, P.C.* (by *Kevin S. Harty* and *Roy H. Henley*), for Saranac Community

Schools Board of Education and Saranac Community School District.

Amici Curiae:

*White, Beekman, Przybylowicz, Schneider, & Baird, P.C.* (by *Thomas A. Baird*), for Michigan Education Association.

*James Dunn & Associates, P.C.* (by *Wendy S. Hardt*), for Parent Support Network.

*Hackett, Maxwell & Phillips* (by *Dawn L. Phillips*), for Michigan Press Association.

*Dykema Gossett* (by *Jonathan D. Rowe*), for Newark Morning Ledger Company.

Before: McDONALD, P.J., and MARKEY and R. I. COOPER,* JJ.

PER CURIAM. In these consolidated cases, plaintiff Lansing Association of School Administrators and plaintiff Christine E. Bradley appeal as of right from two separate circuit court orders requiring defendants to disclose, pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, portions of administrator and teacher personnel files, including performance evaluations, disciplinary records, and parent complaints. Because no common-law or constitutional right protects these documents from disclosure or provides a right to privacy or confidentiality regarding performance evaluations of public employees, we affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

In Docket No. 163316, plaintiff Lansing Association of School Administrators (LASA), on behalf of its members, filed suit against defendant Lansing school board and other defendants to bar the school board from producing copies of performance evaluation documents for nine member principals and vice-principals pursuant to an FOIA request filed by the Parent Support Network. In its complaint, plaintiff LASA asserted that the requested documents were exempt from disclosure under the FOIA, pursuant to MCL 15.243(1)(a) and (n); MSA 4.1801(13)(1)(a) and (n),[1] and that administrative review procedures specifically protected against the circulation of evaluation documents to anyone except appropriate administrative personnel in the school district. Relying on OAG, 1990, No 6668, p 409 (November 28, 1990), the trial court held that a personnel evaluation conducted by a public body is not exempt from disclosure under the FOIA and that any provision within the parties' collective bargaining agreement requiring the school district to exempt this information from disclosure was void as against public policy. The trial court and this Court

---

[1] Sections 13 of the FOIA states in relevant part:

A public body may exempt from disclosure as a public record under this act:

(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

*     *     *

(n) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communications between officials and employees of public bodies clearly outweighs the public interest in disclosure. . . .

stayed further proceedings to enforce the court's disclosure order, however, pending this appeal.

In Docket No. 168371, plaintiff Bradley filed her complaint against defendants Saranac Community Schools Board of Education and Saranac Community School District after Robert Karp, Jr., the father of one of Bradley's pupils, presented defendants with an FOIA request for (1) progressive or disciplinary actions against plaintiff during the past six years, (2) written complaints against plaintiff for the past six years, (3) classroom assignment transfers, (4) teacher evaluations or service ratings for the past six years, and (5) liability insurance policies covering plaintiff. Defendants provided Karp with the transfer and insurance information before the initiation of plaintiff's lawsuit, which requested a declaratory judgment that the personnel evaluations, disciplinary memoranda, and written complaints were exempt from disclosure under the FOIA.[2] After reviewing copies of the requested documents in their original and redacted forms, the trial court denied plaintiff's requested relief and ordered that Karp receive redacted copies of the documents. This order was also stayed pending appeal.

On appeal, plaintiffs assert that the personnel records at issue in these cases are exempt from disclosure under § 13(1)(a) or (n) of the FOIA, MCL 15.243(1)(a), (n); MSA 4.1801(13)(1)(a), (n). We review de novo the trial court's rulings on questions of law in declaratory judgment actions. See *Feaster v Portage Public Schools*, 210 Mich App 643, 648; 534 NW2d 242 (1995); *Health Central v Comm'r of Ins*, 152 Mich App 336, 347; 393 NW2d 625 (1986). Also,

---

[2] See n 1.

we will not disturb on appeal a public body's decision to disclose exempted information absent an abuse of discretion. See *Blue Cross & Blue Shield of Michigan v Ins Bureau*, 104 Mich App 113, 125-126; 304 NW2d 499 (1981). Moreover, the decision whether to grant injunctive relief is within the sound discretion of the trial court and must be based on the facts of each particular case. *Soergel v Preston*, 141 Mich App 585, 590; 367 NW2d 366 (1985). Because the personnel records at issue in this case are not protected from disclosure by the common law or the constitution, we find no abuse of discretion in the trial courts' decisions permitting disclosure of the requested personnel records.

The FOIA protects citizens' rights to examine information regarding the formal acts of public officials and employees and to participate in the political process. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 231; 507 NW2d 422 (1993). As opposed to cases where entities requesting documents pursuant to the FOIA sue after the public body refuses to disclose the public documents, this is a "reverse FOIA" case, i.e., plaintiffs seek to prevent disclosure of information contained in the files of government agencies. *Tobin v Civil Service Comm*, 416 Mich 661, 670-671; 331 NW2d 184 (1983); *Health Central, supra* at 340-341.

> The FOIA requires disclosure of all public records and only authorizes nondisclosure, at the agency's discretion, under certain enumerated exceptions. [MCL 15.243(1); MSA 4.1801(13)(1).] Thus, the FOIA did not create any right to prevent disclosure, and *"[a]ny asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA." Tobin, [supra* at 668-669]. "In effect, a reverse FOIA suit to prevent disclosure of information within an FOIA

exemption must be *evaluated as if the FOIA* did not exist." 416 Mich 670. [*Health Central, supra* at 341 (emphasis added).]

Because the FOIA does not provide the relief that plaintiffs seek here and we must evaluate plaintiffs' privacy claims "as if the FOIA did not exist," *Tobin, supra,* we will not apply the public policies underlying the FOIA[3] or engage in any of the balancing tests weighing the right to privacy against the public's right to full and complete information regarding the affairs of government.[4] Also, because the FOIA exemptions are inapplicable to this analysis, we believe that both the federal FOIA[5] and the opinion of the state attorney general addressing the exemptions to disclosure contained in § 13(1)[6] are irrelevant and provide no guidance in resolving this issue on appeal. Instead, pursuant to our Supreme Court's instructions in *Tobin, supra* at 670-673, we must determine whether other substantive limitations to disclosure exist with respect to the requested information.

The Legislature has not defined the right to privacy, so we are left to apply the principles of privacy developed under our common law and our constitution. *State Employees Ass'n v Dep't of Management & Budget,* 428 Mich 104, 123; 404 NW2d 606 (1987)

---

[3] See *Swickard v Wayne Co Medical Examiner,* 438 Mich 536, 543-544; 475 NW2d 304 (1991).

[4] *Swickard, supra* at 543-544; *State Employees Ass'n v Dep't of Management & Budget,* 428 Mich 104, 113-121, 126, 129; 404 NW2d 606 (1987); *Int'l Union, United Plant Guard Workers of America v Dep't of State Police,* 422 Mich 432, 439-440, n 7; 373 NW2d 713 (1985), modified on other grounds 423 Mich 1205 (1985).

[5] 5 USC 552(b) *et seq.*

[6] See OAG, 1990, No 6668, p 409 (November 28, 1990); OAG, 1987-1988, No 6504, p 295 (March 4, 1988); OAG, 1979-1980, No 5500, p 255 (July 23, 1979).

(Cavanagh, J.). "The contours and limits are thus to be determined by the court, as the trier of fact, on a case-by-case basis in the tradition of the common law." *Id.* Both plaintiffs asserted in their complaints that the disclosure of the requested evaluations and other personnel records would constitute an invasion of privacy. The common-law right of privacy protects against four types of invasion of privacy:

> " '1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
> " '2. Public disclosure of embarrassing private facts about the plaintiff.
> " '3. Publicity which places the plaintiff in a false light in the public eye.
> " '4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' Prosser, *Privacy*, 48 Cal L Rev 383, 389 (1960)." *Beaumont v Brown*, 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977); see also 3 Restatement Torts, 2d, § 652A, p 376. [*Tobin, supra* at 672.]

We find that none of the four types of invasion of privacy is implicated in this case.

The intrusion-into-seclusion theory of privacy requires the plaintiff to establish the following three elements: (1) the existence of a secret and private subject matter, (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter by the defendant *through some method objectionable to the reasonable man. Tobin, supra* at 672, citing *Beaumont v Brown*, 65 Mich App 455, 462; 237 NW2d 501 (1975), rev'd 401 Mich 80; 257 NW2d 522 (1977); see also 3 Restatement Torts, 2d, § 652B and comments, pp 378-380. Plaintiffs' claims that disclosure of the personnel file information would intrude upon admin-

istrators' and teachers' privacy must fail because they "have suggested nothing objectionable about the method by which the information was obtained or is proposed to be released." *Tobin, supra* at 673. See also *Detroit Free Press, Inc v Oakland Co Sheriff*, 164 Mich App 656, 663-664; 418 NW2d 124 (1987). As in *Tobin, supra* at 674,[7] the method employed to obtain the information sought in this case, i.e., merely writing a letter of request, is neither intrusive nor objectionable to the reasonable person. It is the contemplated disclosure, not the method of the disclosure, that plaintiffs find intrusive and objectionable. *Id.*; see also *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 549, n 10; 475 NW2d 304 (1991).

In the absence of any bright lines to guide litigants and courts who are struggling with the dilemma presented in this case, we feel compelled to propound at least one bright-line test for future plaintiffs filing reverse FOIA cases: because a written FOIA request does not, as a matter of law, constitute an objectionable method of obtaining allegedly private information from a public body, the reverse FOIA plaintiff has no claim under the common law for relief pursuant to the intrusion-into-seclusion branch of the invasion-of-privacy tort. *Swickard, supra; Tobin, supra* at 672-674.

---

[7] In *Tobin, supra,* our Supreme Court held that in a reverse FOIA case, no common-law or constitutional right to privacy existed to prohibit the disclosure of a list of names and addresses for all classified civil service employees to various labor organizations who needed the information in order to solicit members during their organizational campaigns. Because it found no common law or constitutional right to privacy protecting this information, the Court held that the plaintiffs were not entitled to injunctive relief to prevent disclosure. *Id.* at 664, 672-678.

Under the second theory of privacy, public disclosure of embarrassing private facts, plaintiffs must show that the disclosed information is highly offensive to a reasonable person and of no legitimate concern to the public. *Swickard, supra; Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 728; 300 NW2d 687 (1980), citing 3 Restatement Torts, 2d, § 652D, p 383. Moreover, the publicity must concern plaintiffs' private, as distinguished from public, lives. *Fry, supra* at 729. In this case, the information at issue concerns the administrators' and a teacher's performance in their respective public jobs; neither plaintiff has asserted that the information contained in their employer-compiled personnel files relates to the administrators' and teachers' private lives. Also, according to 3 Restatement Torts, 2d, § 652D, p 384, the term "publicity" involves a communication to so many persons that the matter is substantially certain to become public knowledge. "Thus, it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.; Beaumont,* 401 Mich 104-105. Further, we are hard-pressed to conclude that information regarding the professional performance of school administrators and teachers, including complaints regarding their teaching methods, actions taken to address these complaints, and any disciplinary steps taken as a result, are not matters of legitimate concern to the public. *Fry, supra* at 728-729.[8]

---

[8] See also *Ridenour v City of Dearborn School Dist Bd of Ed,* 111 Mich App 798, 805; 314 NW2d 760 (1981):

From defendant's viewpoint, disclosure of performance evaluations to the public is an intrusion of privacy which outweighs the

We therefore find no common-law invasion of privacy based upon the public disclosure of embarrassing private facts.

On the face of plaintiffs' complaints, we also find that neither false-light invasion of privacy nor misappropriation of a name or likeness provides plaintiffs with the common-law right to privacy that they need to preclude defendants from disclosing the requested personnel information in either of the consolidated cases before this Court. We find, therefore, that plaintiffs have no common-law right to privacy with respect to the personnel information that is the focus of Parent Support Network's and Karp's FOIA requests.

Moreover, while neither plaintiff has asserted a constitutional right to privacy, we will review this argument on appeal as an alternative rationale for relief. See *Goodridge v Ypsilanti Twp Bd*, 209 Mich App 344, 351; 529 NW2d 665 (1995), citing MCR 7.216(A)(7); cf. *Booth Newspapers, supra* at 234. In *Detroit Free Press, supra* at 667-668, this Court relied upon the United States Supreme Court's observations in *Paul v Davis*, 424 US 693, 712-713; 96 S Ct 1155; 47 L Ed 2d 405 (1976), regarding the concept of a constitutional right to privacy:

> While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that

---

public's right to know. Such a perspective overlooks the public interest in the area of government. People have a strong interest in public education. Because a large portion of the tax dollar goes for the support of the schools, the taxpayer is increasingly holding the boards and administrators accountable for these moneys. Further, the public continues to have an increasing interest in the educational process and expects this public body to be accountable for its actions.

"zones of privacy" may be created by more specific consti-
tutional guarantees and thereby impose limits upon govern-
ment power. See *Roe v Wade*, 410 US 113, 152-153 [93 S Ct
705, 726; 35 L Ed 2d 147, 176-178] (1973). Respondent's
case, however, comes within none of these areas. . . . [O]ur
other "right of privacy" cases, while defying categorical
description, deal generally with substantive aspects of the
Fourteenth Amendment. In *Roe* the Court pointed out that
the personal rights found in this guarantee of personal pri-
vacy must be limited to those which are "fundamental" or
"implicit in the concept of ordered liberty" as described in
*Palko v Connecticut*, 302 US 319, 325 [58 S Ct 149, 152; 82 L
Ed 288, 292] (1937). The activities detailed as being within
this definition were ones very different from that for which
respondent claims constitutional protection—matters relat-
ing to marriage, procreation, contraception, family relation-
ships, and child rearing and education. In these areas it has
been held that there are limitations on the States' power to
substantively regulate conduct.

See also *Hobbins v Attorney General*, 205 Mich App
194, 206-207; 518 NW2d 487 (1994), modified on other
grounds 447 Mich 436; 527 NW2d 714 (1994). The
right to privacy found in *Roe, supra,* was founded in
the Fourteenth Amendment concept of personal lib-
erty and restriction upon state action, but that right is
not unlimited. *Hobbins, supra* at 205. The " 'rights not
readily identifiable in the Constitution's text' " are
characterized as those fundamental liberties deeply
rooted in our nation's history and tradition, i.e.,
"neither liberty nor justice would exist if [they] were
sacrificed." *Id.* at 206, citing *Bowers v Hardwick*, 478
US 186, 191-192; 106 S Ct 2841; 92 L Ed 2d 140 (1986).

Against this backdrop, we submit that liberty and
justice will not cease to exist if we fail to recognize
plaintiffs' right to privacy regarding school employ-

ees' personnel records. *Id.* at 207. We therefore find no infringement of any constitutional right to privacy.

Two other considerations also support our decision to affirm the decisions of the trial courts. First, the Legislature specifically exempted from disclosure the "personnel records of law enforcement agencies" in § 13(1)(t)(ix) of the FOIA, MCL 15.243(1)(t)(ix); MSA 4.1801(13)(1)(t)(ix).[9] From this, we surmise that the Legislature anticipated that personnel records of public employees would be the target of FOIA requests, but it saw fit to protect only those records concerning law enforcement officers, not teachers. Also, the Legislature chose not to adopt as the wording for § 13(1)(a) the more specific wording found in the federal FOIA exemption from disclosure for "personnel and medical files and similar files." 5 USC 552(b)(6.) This further persuades us that it was not the Legislature's intent to protect the personnel records of school administrators and teachers from FOIA requests. Finally, counsel for plaintiff Bradley admitted that the personnel records at issue would be discoverable in a civil case or teacher tenure proceeding, barring any applicable privilege. Plaintiffs have asserted no privilege, and we find none, that would prevent disclosure of these records pursuant to discovery procedures. Thus, with respect to this issue of first impression, we remain unpersuaded that the trial courts erred in ordering disclosure of the requested personnel records pursuant to the FOIA.

Plaintiff LASA also argues on appeal that the trial court erred in ruling that contractual provisions

---

[9] These personnel records are exempt from disclosure under 13(1)(t)(ix) "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure."

between the parties guaranteeing confidentiality in the performance evaluation process for school administrators are null and void. We disagree. The parties' collective bargaining agreement provided for the evaluation of administrators' performance, pursuant to defendant school district's Administrative Performance Review Handbook. The review form provided that "[t]his evaluation document will be reviewed only by appropriate administrative personnel of the Lansing School District." We find that defendant school district may not eliminate its statutory obligations to the public merely by contracting to do so with plaintiff LASA. See, e.g., *Citizens Ins Co of America v Federated Mutual Ins Co*, 199 Mich App 345, 347; 500 NW2d 773 (1993); *Shapiro v Steinberg*, 176 Mich App 683, 687; 440 NW2d 9 (1989).[10]

Accordingly, plaintiffs have no substantive right independent of the FOIA to the nondisclosure of the requested information. Consequently, plaintiffs are not entitled to injunctive relief preventing such disclosure. Accord *Tobin, supra* at 674, 677-678. We find no abuse of discretion in the trial courts' respective decisions ordering the release of the requested information, subject to the appropriate redactions approved by the courts.

Affirmed.

R. I. COOPER, J., did not participate.

---

[10] "It is well established that the courts of this state will not enforce, either in law or in equity, a contract which violates a statute or which is contrary to public policy." *Shapiro, supra.*