# STATE OF MICHIGAN
# COURT OF APPEALS

---

JANE DOE and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs-Appellees,

v

HENRY FORD HEALTH SYSTEM

        Defendant/Cross-Plaintiff,

and

PERRY JOHNSON AND ASSOCIATES INC,

        Defendant/Cross-Defendant-
        Appellant,

and

C TECH LLC,

        Cross-Defendant.

FOR PUBLICATION
December 18, 2014
9:15 a.m.

No. 317973
Wayne Circuit Court
LC No. 12-001649-NO

---

JANE DOE and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs-Appellees/Cross-
        Appellants,

v

HENRY FORD HEALTH SYSTEMS,

        Defendant/Cross-Plaintiff-
        Appellant/Cross-Appellee,

and

PERRY JOHNSON AND ASSOCIATES INC,

No. 317975
Wayne Circuit Court
LC No. 12-001649-NO

-1-

Defendant/Cross-Defendant,

and

C TECH LLC,

Cross-Defendant.

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

The present consolidated cases involve a class action lawsuit concerning allegations of negligence, breach of contract, and invasion of privacy. Defendants Perry Johnson and Associates, Inc. ("Perry Johnson") and Henry Ford Health Systems ("Henry Ford") appeal as on leave granted the order denying their respective motions for summary disposition and the majority of their challenges to class certification. Plaintiffs[1] have filed a cross-appeal in which they contest the trial court's decision to decertify a subgroup in the class, thereby reducing its number from 320 to 159. For the reasons explained in this opinion, we reverse the grant of class certification and we remand for entry of summary disposition in favor of Henry Ford and Perry Johnson.

Plaintiff and the other members of the certified class are a group of 159 patients who had doctor's visits at Henry Ford between June 3, and July 18, 2008. Perry Johnson provides transcription services for Henry Ford involving patient records, and the present case arises from an error by Perry Johnson's subcontractor, Vingspan, that led to the availability of patient records on the Internet. Specifically, Vingspan made a configuration change to their server which left certain patient records "unprotected." As a result, "Googlebot," Google's automated web crawler, indexed the information, thereby making it possible to find patient information through Google's search engine. The information made accessible included the patient's name, medical record number, the date of the patient's visit, the location of the visit, the physician's name and a summary of the visit. In plaintiff's particular case, this information included diagnoses of "Cervical dysplasia secondary to HPV (Human Papillomavirus)"—a sexually transmitted disease—and alopecia, i.e., baldness.

After Henry Ford learned of the problem, all information was removed from access on the Internet, the affected patients were notified, and steps were taken to more adequately protect patient information. Notably, there is no indication in the lower court record that the information

---

[1] As used in this opinion, "plaintiff" refers to Jane Doe and "plaintiffs" denotes all the class members collectively.

in question was viewed by a third party on the Internet[2] or that it was used inappropriately. Henry Ford established a "hotline" following the incident, and received no report, through the hotline or otherwise, that patient information had been viewed online or used for identity theft purposes. Plaintiff likewise conceded at her deposition that she had no indication that anyone saw, or used, any of her information that had been made visible on the Internet.

Following Henry Ford's notification to the patients, plaintiff filed the current lawsuit and sought class certification. Her suit includes three claims: (1) negligence, (2) invasion of privacy in the form of public disclosure of private facts, and (3) breach of contract under the theory that she was a third party beneficiary of Henry Health's agreement with Perry Johnson. Plaintiff's complaint sought "all damages" suffered by her and those similarly situated. When asked during discovery particularly what damages she had suffered and intended to pursue, plaintiff advanced a theory of "presumed damages" and she generally indicated that she and the others were "entitled to compensation as a result of the Defendant's invasion of their common interest in privacy." However, the only actual losses she identified were those incurred for the procurement of monitoring to guard against identity theft. In total, plaintiff's attorney paid $275 to a company called "LifeLock" for identity theft protection on plaintiff's behalf. In contrast, plaintiff and her counsel both expressly acknowledged during the discovery process that they were not seeking damages for emotional distress, wage loss, or personal injury.

Over objections from Perry Johnson and Henry Ford, the trial court granted class certification. Initially the class consisted of 320 individuals, but the trial court later reduced that number to the 159 members referenced above.[3] Both Perry Johnson and Henry Ford moved for summary disposition, and the trial court denied those motions. Henry Ford and Perry Johnson now both appeal as on leave granted from the denial of their respective motions for summary disposition. Also, plaintiff filed a cross-appeal, contesting the trial court's reduction of the class from 320 individuals to 159.

Appellate review of a motion for summary disposition is de novo. *Spiek v Mich Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, where no genuine issue of any material fact exists to warrant a trial. *Id.* This Court considers the pleadings, affidavits, depositions, admissions and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999); MCR 2.116(G)(5). A material question of fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds

---

[2] There is evidence that an unknown patient discovered his or her own personal medical records online, but there is absolutely no indication that records were otherwise accessed via the Internet.

[3] The additional members decertified from the class were Henry Ford patients who had information made available online relating to doctor's visits between February 23 and April 23, 2009. This availability of information was factually distinct, however, in that Perry Johnson and Vingspan were uninvolved. A different contractor, C Tech LLC, and its subcontractor, Odyssey, had responsibility for the medical records and their subsequent availability on Google.

could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

When reviewing a trial court's certification of a class, we review the trial court's findings of fact for clear error and its discretionary decisions are reviewed for an abuse of discretion. *Duncan v Michigan*, 300 Mich App 176, 185; 832 NW2d 761 (2013). The interpretation and application of a court rule involves questions of law this Court reviews de novo. *Id.*

On appeal, we first consider whether a material question of fact remains in regard to plaintiff's claim for invasion of privacy in the form of public disclosure of private facts. Among other arguments regarding plaintiff's claim for invasion of privacy, we are asked to address whether the claim must be dismissed because invasion of privacy is an intentional tort and it is undisputed that the information in question became accessible on the Internet due to negligence. Plaintiff, in contrast, maintains that invasion of privacy may be established without regard for whether the disclosure of information was intentionally done.

In basic terms, to prove invasion of privacy through the public disclosure of private facts, a plaintiff must show: "(1) the disclosure of information, (2) that is highly offensive to a reasonable person, and (3) that is of no legitimate concern to the public." *Doe v Mills*, 212 Mich App 73, 80; 536 NW2d 824 (1995). The information revealed must relate to the individual's private as opposed to public life. *Lansing Ass'n of Sch Adm'rs v Lansing Sch Dist Bd of Ed*, 216 Mich App 79, 89; 549 NW2d 15 (1996). "Liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public." *Doe*, 212 Mich App at 82. Further, the "publicity" of that information must consist of communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, comment a. See also *Lansing Ass'n of Sch Adm'rs*, 216 Mich App at 89.

We are not aware of a Michigan case to overtly consider whether the disclosure of information to the public must be intentionally done, but nonetheless our review of Michigan caselaw leads us to conclude that it is in fact an intentional tort. Specifically, we find it notable that the public disclosure of private facts has been discussed by the Michigan Supreme Court as an intentional tort. See, e.g., *Smith v Calvary Christian Church*, 462 Mich 679, 680, 688-689; 614 NW2d 590 (2000). Further, we are not aware of—nor has plaintiff presented us with—any case in Michigan where an invasion of privacy proceeded on the basis of negligent disclosure. The conduct involved has instead been the intentional disclosure of private facts. See, e.g., *id.* (considering a pastor's announcement of a parishioner's sins during church services); *Doe*, 212 Mich App at 77 (involving protestors' display of signs informing public about specific women's intentions to undergo abortions); *Winstead*, 205 Mich App at 673 (discussing publication of a newspaper article detailing facts about the plaintiff's sex life). Given that no Michigan authority discusses a cause of action for invasion of privacy premised on negligent conduct, the logical conclusion is that such a cause of action does not exist in Michigan. Cf. *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 250; 828 NW2d 660 (2013) (concluding noneconomic damages for negligent destruction of property not available in Michigan where such damages had never

before been contemplated in Michigan's caselaw). Consequently, we conclude that to establish an invasion of privacy through the disclosure of private facts, the disclosure of those facts must be intentionally done.[4] Because the undisputed facts in this case indicate nothing more than a negligent disclosure of private information, no material question of fact remains and summary disposition should have been granted regarding plaintiff's invasion of privacy claim.

Regarding plaintiff's claims for negligence and breach of contract, on appeal, the parties dispute the availability of damages to compensate for the procurement of identity theft protection. Henry Ford and Perry Johnson both contend that, in the absence of evidence of present injury to plaintiff's person or property, such damages are not recoverable in negligence, breach of contract, or invasion of privacy.[5] Plaintiff, in contrast, maintains that the present injury in this case consists of the invasion of her privacy, for which she maintains she may recover costs associated with LifeLock's services. For the reasons described below, we agree with Henry Ford and Perry Johnson, and we hold that plaintiff's identity theft protection services are not cognizable damages in the absence of present injury.

Specifically, in the negligence context, in order to establish a claim for negligence, plaintiffs must prove: "(1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v Dow Chem Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005). Stated differently, in a negligence action, plaintiffs mush show: "duty, breach of that duty, causation, and damages." *Id.* at 72 (quotation omitted). Underlying these four elements is the issue of injury, and it is well-settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury. *Id.* at 74-76. "It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Id.* at 73. Consequently, damages "incurred in anticipation of possible future injury rather than in response to present injuries" are not cognizable under Michigan law. *Id*. Thus, for example, in *Henry*, the Court determined that the plaintiffs, individuals living and working in the Tittabawasee flood plain, could not pursue damages for medical monitoring services where there was no indication, as of yet, that anyone had been harmed by the release of dioxin into the flood plain. *Id.* at 68-70.

Analogously, in this case, plaintiff has not shown that the costs for the credit monitoring services relate to a present, actual injury. She has in fact conceded that she has no evidence her information was viewed by anyone on the Internet or used for an improper purpose such as

---

[4] This view comports not only with Michigan's caselaw, but with that of other jurisdictions, see, e.g., *Randolph v ING Life Ins & Annuity Co*, 973 A2d 702, 711 (DC 2009); *Granger v Klein*, 197 FSupp 2d 851, 869 (ED Mich 2002); *Snakenberg v Hartford Cas Ins Co, Inc*, 299 SC 164, 170-171; 383 SE2d 2 (1989), and learned treatises, see, e.g., 77 C.J.S. Right of Privacy and Publicity § 32 ("[T]he public disclosure of private facts, involves the *intentional* public disclosure of private facts . . . ."); Dan B. Dobbs, The Law of Torts, § 581, p 368 (recognizing disclosure must be intentional).

[5] Having determined no material question of fact remains regarding plaintiff's invasion of privacy claim, we need not address what damages would be available in relation to such a claim.

identity theft. Absent some such indication of present injury to her credit or identity, it is clear that these damages for credit monitoring were incurred in "anticipation of possible future injury." See *id.* at 73. Because "these economic losses are wholly derivative of a *possible*, *future* injury rather than an *actual*, *present* injury," *id.* at 78, the costs of these credit monitoring services are not cognizable under Michigan's negligence law.[6]

Similarly, in regard to breach of contract, a party claiming a breach must establish "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2013) (citation omitted). The measure of damages in relation to a breach of contract is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94 (2006). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). Thus, in contrast, the damages "must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies . . . ." *McEwen v McKinnon*, 48 Mich 106, 108; 11 NW 828 (1882). See also *Body Rustproofing, Inc v Mich Bell Tel Co*, 149 Mich App 385, 390; 385 NW2d 797 (1986).

In this case, assuming arguendo that plaintiff could seek damages for breach of the contract in question, plaintiff's claim for credit monitoring services are speculative insofar as they do not arise from the purported breach of contract but depend entirely on the occurrence of multiple contingencies which may or may not occur at some point in the future. That is, the alleged breach has not caused plaintiff to suffer an injury to her identity or credit. Rather, any injury is entirely contingent on the hypothetical possibility that some unknown person viewed the information and at some unknown time in the future might make use of it for nefarious purposes. Because her speculative damages derive from a possible future harm that may or may not occur, rather than directly from the breach of contract, plaintiff may not recover under contract law for the cost of credit monitoring services. See *McEwen*, 48 Mich at 108. See also *Hendricks v DSW Shoe Warehouse, Inc*, 444 F Supp 2d 775, 780 (WD Mich 2006).

In regard to both negligence and breach of contract, plaintiff offers the assertion on appeal that, because she has suffered an invasion of privacy, injury is presumed and she may therefore recover "presumed" damages. Plaintiff's assertion is entirely unsupported as a plaintiff

---

[6] This conclusion comports not only with *Henry*'s reasoning, but with the persuasive authority of numerous courts to have determined that credit monitoring services may not be recovered as damages to combat an increased risk of future identity theft following a data breach where there has been no evidence of identity theft. See, e.g., *Reilly v Ceridian Corp*, 664 F3d 38, 45 (CA 3 2011); *Randolph v ING Life Ins & Annuity Co*, 486 F Supp 2d 1, 7 (DDC 2007); *Pisciotta v Old Nat Bancorp*, 499 F3d 629, 639 (CA 7 2007); *Amburgy v Express Scripts, Inc*, 671 F Supp 2d 1046, 1055 (ED Mo 2009); *Shafran v Harley-Davidson, Inc*, unpublished opinion of the Federal Southern District Court of New York (Docket No. 07 CIV. 01365 (GBD) (2008).

is required to prove "all" damages in a negligence action, *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 72; 602 NW2d 215 (1999), and to demonstrate the existence of an actual, present injury, *Henry*, 473 Mich at 74-76. In short, setting aside that plaintiff does not have a viable invasion of privacy claim, damages will not be presumed in a negligence action for an alleged invasion of privacy. Cf. *Amburgy*, 671 F Supp 2d at 1055. Likewise, damages are not presumed in relation to contracts, where instead a plaintiff is required to prove the measure of damages with "reasonable certainty." *Alan Custom Homes, Inc*, 256 Mich App at 512.

In sum, we will not presume damages from plaintiff's purported invasion of privacy, and plaintiff's claim for credit monitoring is not cognizable. Because plaintiff has failed to identify any other damages she wishes to pursue in relation to negligence or breach of contract,[7] she has not shown a material question of fact remains and summary disposition should have been granted in regard to both these claims. MCR 2.116(C)(10). See *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000); *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 69; 761 NW2d 832 (2008). As discussed, plaintiff's claim for invasion of privacy should likewise have been dismissed because no material question of fact remains regarding whether the disclosure in this case was intentionally done. MCR 2.116(C)(10).

Having determined that plaintiff has no individual claims to pursue against either Henry Ford or Perry Johnson, we also conclude that the trial court's grant of class certification must be reversed. See MCR 3.501(A)(1). That is, "[t]he threshold question in any proposed class action is whether the proposed class representative is a member of the class." *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 598; 654 NW2d 572 (2002). See also MCR 3.501(A)(1)(c) (requiring that, to merit class certification, a representative for the class must have claims typical of the class). "A plaintiff who cannot maintain the cause of action as an individual is not qualified to represent the proposed class." *Zine v Chrysler Corp*, 236 Mich App 261, 287; 600 NW2d 384 (1999). See also *Tucich v Dearborn Indoor Racquet Club*, 107 Mich App 398, 407; 309 NW2d 615 (1981) ("[O]ne may not sue in a class action a defendant whom one could not sue individually."). It follows that, because plaintiff is not a qualified representative, the trial court abused its discretion in certifying the class and the order granting class certification must

---

[7] Plaintiff maintains that Perry Johnson and Henry Ford misstate the lower court record by suggesting that the only damages she intends to pursue relate to economic damages incurred for identity theft protection monitoring. Despite these protests, apart from the assertion of presumed damages (which are without merit), plaintiff does not identify what additional damages she intends to pursue. In fact, in the lower court, she specifically indicated that she would not be pursuing claims of personal injury, emotional distress, or wage loss, and we view these concessions as an abandonment or waiver of those damages. See *Braverman v Granger*, 303 Mich App 587, 609; 844 NW2d 485 (2014). See also *Greenwood v Davis*, 106 Mich 230, 235; 64 NW 26 (1895). In short, she has failed to identify damages to survive a motion for summary disposition.

be reversed.[8]  See *Camden v Kaufman*, 240 Mich App 389, 402; 613 NW2d 335 (2000).  We therefore reverse the grant of class certification and remand for entry of summary disposition in favor of Henry Ford and Perry Johnson.

Reversed and remanded for entry of summary disposition for Henry Ford and Perry Johnson.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

[8] Having determined class certification was an abuse of discretion, we find no merit to plaintiff's assertion on cross-appeal that the class size should have been larger.  Plaintiff was no more appropriate to represent the larger class than she was to represent the 159 individuals in question.