*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HASTINGS MUTUAL INSURANCE COMPANY,
Subrogee of R SHAFER BUILDER LLC,

        Plaintiff-Appellee,

v

NIDEC CHS LLC, formerly known as CHS
AUTOMATION, also known as METAL
STAMPING SUPPORT GROUP LLC, and NIDEC
PRESS & AUTOMATION,

        Defendants-Appellants.

UNPUBLISHED
October 22, 2024
1:13 PM

No. 367639
Macomb Circuit Court
LC No. 2022-000198-CB

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this subrogation action, defendants appeal as of right the trial court's order denying their third motion for summary disposition and granting plaintiff's motion for partial summary disposition, and the order denying defendants' motion for reconsideration. Defendants also challenge the order granting plaintiff summary disposition on damages under MCR 2.116(C)(10). Defendants contend the trial court erred because the lease agreement between defendants and plaintiff's subrogor, R Shafer Building LLC, does not assign liability to defendants for fire-related damages, and the plain language of the lease reflects the parties' intent to have Shafer insure the building. We reverse and remand.

## I. FACTS

This case arises from a building fire. Plaintiff issued an insurance policy to Richard Shafer, doing business as R Shafer Builder LLC, for a building Shafer leased to defendants, who used it to conduct their coil processing company. The lease provides, in relevant part:

> 6. **REAL PROPERTY INSURANCE:** The Landlord will insure the building for property damage and for the full replacement value at its sole discretion and shall invoice Tenant for the cost of said insurance. The Tenant agrees to pay invoice within (30) days after receiving it.

\* \* \*

13. **FIRE:** It is understood and agreed that if the premises hereby leased be damaged or destroyed in whole or in part by fire or other casualty during the term hereof, the Landlord will repair and restore the same to good tenantable condition with reasonable dispatch, and that the rent herein provided for shall abate entirely in case the entire premises are untenantable and pro rata for the portion rendered untenantable, in case a part only is untenantable, until the same shall be restored to a tenantable condition; provided, however, that if the Tenant shall fail to adjust his own insurance or to remove his damaged goods, wares, equipment or property within a reasonable time, and as a result thereof the repairing and restoration is delayed, there shall be no abatement of rental during the period of such resulting delay, and provided further that there shall be no abatement of rental if such fire or other cause damaging or destroying the leased premises shall result from the negligence or willful act of the Tenant, his agents or employees, and provided further that if the Tenant shall use any part of the leased premises for storage during the period of repair a reasonable charge shall be made therefor against the Tenant, and provided further that in case the leased premises, or the building of which they are a part, shall be destroyed to the extent of more than one-half of the value thereof, the Landlord Tenant, may at their mutual option, terminate this Lease forthwith by a written notice to each other.

14. **REPAIRS:** The Landlord after receiving written notice from the Tenant and having reasonable opportunity thereafter to obtain the necessary workmen therefor agrees to keep in good order and repair the roof, outer walls, foundation and structural components of the premises, the parking lot, all utility and drainage services ([sic] including water, electric, gas, sewer and sanitary service leading up to the building, but not the doors, door frames, window glass, window casings, window frames, windows or any of the appliances or appurtenances of said window casings, window frames and windows, doors or door frames, preventative maintenance of Heating/HVAC units (as required by units' manufacturer) or any attachment thereto or attachments to said building or premises used in connection therewith. Notwithstanding the foregoing, Landlord will not be responsible for any repairs resulting from negligence of Tenant, its agents, employees, or invitees. Also, Tenant will not be responsible for replacement of windows or Heating/HVAC units or other mechanical systems, should replacement be required due to poor overall quality or condition in which event such replacement shall be Landlord's obligation unless the poor condition is a result of Tenant's failure to maintain as provided in this Lease. Tenant shall purchase a maintenance contract for the Heating/HVAC units that provides for annual inspections and preventative maintenance for the Heating/HVAC units. As long as the Tenant has a maintenance contract for the Heating/HVAC units during the term of the lease, the repairs of the Heating/HVAC units shall be at the Landlord's sole cost and expense. Replacement of the units however, shall be at the Landlord's sole discretion.

\* \* \*

-2-

16. **REPAIRS AND ALTERATIONS:** The Tenant further covenants and agrees that, except for Landlord's obligations under this Lease he will, at his own expense, during the continuation of this Lease, keep the said premises and every part thereof in as good repair and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted. The Tenant shall not make any alterations, additions or improvements to said premises without the Landlord's written consent, and all alterations, additions or improvements made by either of the parties hereto upon the premises, except movable office furniture and trade fixtures, shall be the property of the Landlord, and shall remain upon and be surrendered with the premises at the termination of this Lease, without molestation or injury. All Tenant alterations shall be performed by a licensed contractor.

\* \* \*

18. **CARE OF PREMISES:** The Tenant shall not perform any acts or carry on any practices which may injure the building or be a nuisance or menace to other Tenants in the building and shall keep premises under his control (including adjoining drives, streets, alleys or yards) clean and free from rubbish, dirt, snow and ice at all times, and it is further agreed that in the event the Tenant shall not comply with these provisions, the Landlord may enter upon said premises and have rubbish, dirt and ashes removed and the side walks cleaned, in which event the Tenant agrees to pay all charges that the Landlord shall pay for hauling rubbish, ashes and dirt, or cleaning walks. Said charges shall be paid to the Landlord by the Tenant as soon as bill is presented to him. Furthermore, the Tenant shall at his own expense promptly comply with all lawful laws, orders, regulations or ordinances of all municipal, County and State authorities affecting the premises hereby leased and the cleanliness, safety, occupation and use of same, provided that Tenant shall not be required to make any alterations or improvements to the premises in order [to] achieve such compliance if such alterations or improvements would be required regardless of Tenant's particular use of the premises, which alterations or improvements shall be Landlord's obligation.

An addendum to the lease provides in pertinent part:

5. **Fire.** If all, or a substantial portion, of the premises is damaged or destroyed by fire or other casualty during the term of the Lease, Landlord shall provide written notice to Tenant within ten (10) days from the occurrence of such casualty setting forth Landlord's reasonable estimate of the date on which the premises will be restored. Tenant shall have the right to terminate the Lease: (a) if Landlord estimates that the repairs would take more than one hundred eighty (180) days to complete; (b) the repairs are estimated by Landlord to be completed within one hundred eighty (180) days but are not completed with such period; or (b)[sic] the casualty occurs at any time during the final twelve (12) months of the term of the Lease.

As part of their coil processing business, defendants used two large paint booths to complete custom paint jobs for the machines ordered by their customers. Defendants' employees used rags to clean the booths and wipe up excess paint. Because there was a danger that these rags could spontaneously combust, defendants' employees were required to dispose of any paint soaked rags in fireproof bins. However, in March 2021, there was a fire in the building. Plaintiff asserts, supported by the affidavit of a fire investigator, that the fire was "a result of spontaneous combustion from the oil and paint-soaked rags that were not properly disposed of and/or stored in a fire proof container." The cost of repairs was estimated at $1,165,450.85, which was paid by plaintiff to Shafer.

In January 2022, plaintiff, as a subrogee of Shafer, brought suit against defendants, alleging negligence and breach of contract. In lieu of an answer, defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim), but the trial court denied defendants' motion. In November 2022, defendants filed a renewed motion for summary disposition under MCR 2.116(C)(8) and (C)(10). The trial court granted defendants' motion in part, dismissing plaintiff's negligence claim only.

In March 2023, plaintiff moved for partial summary disposition under MCR 2.116(C)(10), claiming there was no genuine issue of material fact that defendants breached the terms of the lease. Plaintiff claimed that under Paragraph 16, defendants had a duty to keep the building "in good repair and give the property back to [Shafer] in the same like condition." Because the building was not damaged by fire when Shafer leased it to defendants, plaintiff averred they violated Paragraph 16. Similarly, under Paragraph 18, plaintiff asserted that defendants were "not to perform any acts or carry on any practices that could injure the building." Plaintiff claimed that defendants violated Paragraph 18 by failing to take precautionary steps to prevent a fire and ensure that flammable materials were properly stored or disposed of. Because Paragraph 14 clearly stated that Shafer was not responsible for repairs resulting from defendants' negligence, and defendants' negligent acts violated Paragraphs 16 and 18, resulting in damage to the building, plaintiff also contended that defendants breached Paragraph 14.

Defendants responded, claiming the lease shifted the risk "that the leased premises might be destroyed or damaged by fire . . . to an insurance company in return for premiums." Under Paragraph 6, the parties agreed Shafer would provide insurance for the building. Paragraph 6 also provides that Shafer would send invoices to defendants for the premiums, and defendants would pay them. Because defendants were required to pay the insurance premiums under the lease, they claimed the lease demonstrates Shafer's and defendants' intent to allocate the risk of fire damage to plaintiff insurance company.

Defendants then filed a third motion for summary disposition under MCR 2.116(C)(5) (party lacks legal capacity to sue), (C)(8), and (C)(10), arguing that Paragraphs 6, 13, and 14, demonstrated the parties' intent to have Shafer's insurance policy with plaintiff cover the cost of repairs. And because the lease contained no language imposing liability for loss from fire onto defendants, they argued plaintiff's breach of contract claim failed. Plaintiff responded, arguing there was no "factual or legal basis" to support defendants' claim that the insurance policy automatically benefited both Shafer and defendants because Shafer's policy did not list defendants as additional insureds, and Paragraph 6 did not require Shafer's insurance policy to cover defendants. Although defendants would be entitled to coverage under Shafer's policy if

defendants paid invoices for the premiums, plaintiff averred there was no evidence that Shafer ever invoiced defendants for the premiums or that defendants paid the premiums. Plaintiff also claimed that defendants did not have any expectations that their rental payments would be used to cover the premiums because the lease clearly indicates that rent did not include the insurance premiums.

The trial court granted plaintiff's motion for partial summary disposition and denied defendants' third motion for summary disposition, finding that defendants violated Paragraph 18 of the lease by engaging in acts that injured the building. The trial court also found "there was no requirement that [defendants] pay the premiums, merely that [Shafer] had the ability to invoice [defendants] for the premiums . . . ." Because Shafer did not invoice defendants, the trial court held that there was no agreement between the parties to have Shafer's insurance policy benefit them both, and thus defendants were not released from liability. Defendants moved for reconsideration under MCR 2.119(F), arguing that the trial court improperly granted summary disposition to plaintiff because the language of Paragraph 6 regarding real property insurance created a "contractual mandate, not a permissive privilege to be exercised at [Shafer's] whim." The trial court denied defendants' motion.

In June 2023, plaintiff moved for summary disposition on damages under MCR 2.11(C)(10), claiming that when an injury is reparable and the expense of repairs is less than the market value, the measurement of real property damage is the cost of repairs. According to plaintiff, after the fire, the building was sold for $2,304,000. The cost to repair the building, which plaintiff paid to Shafer before it was sold, was $1,165,450.85. Because the cost to repair the building was less than its market value, plaintiff claimed it was entitled to $1,165,450.85 in damages. The trial court granted plaintiff's motion for summary disposition on damages, awarding plaintiff $1,165.450.85. Defendants now appeal.

## II. STANDARDS OF REVIEW

We review the interpretation of a contract and the grant or denial of summary disposition de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006); *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). Defendants moved for summary disposition under MCR 2.116(C)(5), (C)(8) and (C)(10), and plaintiff moved for partial summary disposition under MCR 2.116(C)(10). The trial court's order granting partial summary disposition to plaintiff and denying defendants' motion for summary disposition did not cite to the standards underlying a motion for summary disposition under MCR 2.116(C)(8), only (C)(5) and (C)(10). However, the trial court expressly declined to consider whether plaintiff had standing to pursue unpaid insurance premiums, which would have involved a failure to state a justiciable claim. Thus, we review the motions under MCR 2.116(C)(10).

When deciding a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The trial court must only grant summary disposition under MCR 2.116(C)(10) when there is no genuine issue of material fact, meaning that

the record does not leave "open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. SUMMARY DISPOSITION

Defendants claim the trial court erred by granting partial summary disposition to plaintiff and denying their motion for summary disposition because the lease does not assign liability to defendants for fire-related damages and the plain language of the lease reflects the parties' intent to have Shafer insure the building for the benefit of both parties. We agree.

## A. BREACH OF CONTRACT

Defendants first argue summary disposition was improper because, under the plain language of the lease, they were not responsible for damages caused by their negligence.

"[C]ontracts must be read as a whole," *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015), giving "effect to every word, phrase, and clause," while taking pains to "avoid an interpretation that would render any part of the contract surplusage or nugatory," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

> The primary goal of contract construction is to give effect to the parties' intent. To achieve this goal, the Court must read the contract language, giving it its plain and ordinary meaning. When the language of the contract is unambiguous, the contract must be interpreted and enforced as written. When the contract language is subject to multiple interpretations, it is considered ambiguous. Ambiguities in a contract generally raise questions of fact for the jury; however, if a contract must be construed according to its terms alone, it is the court's duty to interpret the language. [*Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 658 NW2d 294 (2020) (quotation marks and citations omitted).]

In *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 632-633; 734 NW2d 217 (2007), the defendants leased an apartment from the plaintiff and accidentally set fire to the kitchen, resulting in substantial damage. The plaintiff sued defendants for breach of contract, claiming the defendants were liable under the lease for fire damage they caused to the premises. *Id*. at 634-636. The lease agreement stated, in relevant part: "*Tenant shall also be liable for any damage to the Premises . . . that is caused by the acts or omissions of Tenant or Tenant's guests*." *Id*. at 636. This Court found that the lease clearly and unambiguously imposed liability on defendants for any damages caused by their acts. *Id*. at 638.

Here, Paragraph 16 requires defendants, at their own expense, to generally keep the building in good repair and "deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted." In the event of fire damage, Paragraph 13 imposes responsibility on Shafer to "repair and restore the [building] to good tenantable condition with reasonable dispatch." However, under Paragraph 14, Shafer "will not be responsible for any repairs resulting from negligence" of defendants. But unlike the lease in *Laurel Woods*, there is no provision that states defendants are responsible for the damages arising from their own acts or negligence. Paragraph 18 states that defendants "shall not perform any acts or

carry on any practices which may injure the building[.]" In the event defendants did not comply with their responsibilities under Paragraph 18, the lease provides that defendants must "pay all charges that [Shafer] shall pay for hauling rubbish, ashes and dirt, or cleaning walks." Nothing in Paragraph 18 suggests that defendants are also liable for the costs of repairing fire damage. If the parties intended to impose liability on defendants for damages arising from their own negligence, the lease should have expressly stated that intention. Because the lease contained no such language, the trial court erred by finding defendants were liable for repairing the damage caused by the fire.

Defendants also argue summary disposition was improper because the plain language of the lease reflects defendants' and Shafer's intent that Shafer would provide insurance for the benefit of both parties. As such, defendants contend they are relieved of liability for fire-related damage and plaintiff's subrogation action is barred.

Paragraph 6 states: "The Landlord will insure the building for property damage and for the full replacement value at its sole discretion and shall invoice Tenant for the cost of said insurance. The Tenant agrees to pay invoice within (30) days after receiving it." The trial court held that there was no agreement between Shafer and defendants that Shafer's insurance policy would benefit both parties. In so holding, the trial court interpreted Paragraph 6 to mean that defendants were not required to pay the insurance premiums, rather, Shafer had the ability to invoice defendants for the premiums at his discretion. However, this interpretation ignores the plain language of Paragraph 6. Paragraph 6 states that Shafer *will* insure the building and *shall* invoice defendants for the cost of insurance. Thus, Shafer did not have discretion to insure the building. Shafer was required to insure the building, which he did, and to invoice defendants for the premiums. See *Wolfenbarger v Wright*, 336 Mich App 1, 31; 969 NW2d 518, 535 (2021) ("The use of the word 'shall' denotes mandatory action."). It is clear that "at its sole discretion" applies to insuring the building *for its full replacement value*.

In his deposition, defendants' Corporate Representative, Used Equipment Manager, and former President and Chief Executive Officer, Eric Werner, stated that defendants were protected under Shafer's insurance policy, but that he was unsure whether this was invoiced, automatically paid, or included in the rent payments. There was no evidence of defendants receiving any invoices from Shafer. The evidence therefore suggests that Shafer did not invoice defendants for the cost of premiums, as it was required to do under the terms of the lease. But because "[l]ogic dictates that a tenant would not agree to pay for . . . insurance premiums unless it also would obtain the benefits of the policy," *Reliance Ins Co v East-Lind Heat Treat, Inc*, 175 Mich App 452, 457; 438 NW2d 648 (1989),[1] the plain language of Paragraph 6 demonstrates the parties' intent that

---

[1] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted). Indeed, "this Court may not be strictly bound to follow older published cases, but traditionally regards them as retaining some authority, at least if they were not disputed by some other contemporaneous case." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

defendants were entitled to coverage under Shafer's insurance policy. Without language specifically imposing liability on defendants for fire damage, reasonable minds could not differ that the exclusive remedy under the lease was limited to insurance proceeds. See *id*. Accordingly, the trial court erred by granting partial summary disposition to plaintiff.[2]

## B. DAMAGES

Defendants claim the trial court erred by granting plaintiff summary disposition on damages because nothing in the lease holds defendants liable for damages to the building and the court utilized the incorrect measure of damages. Even if the cost of repairs was the correct measure of damages, defendants contend summary disposition was still improper because plaintiff failed to submit evidence showing Shafer actually incurred costs of repair or other expenses arising from the fire.

A party claiming a breach of contract must establish "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014) (citation omitted). In an action based in contract, "the parties are entitled to the benefit of the bargain as set forth in the agreement." *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94 (2006) (citation omitted). "The measure of damages in relation to a breach of contract is the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe*, 308 Mich App at 601 (quotation marks and citation omitted).

> The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach. [D]amages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies . . . . Although breach-of-contract damages need not be precisely established, uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.] [*Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550-551; 904 NW2d 192 (2017) (quotation marks and citations omitted; alterations in original).]

As stated, the lease does not directly impose liability on defendants for damage caused by their own negligence. See *Laurel Woods*, 274 Mich App at 636-638. Instead, Paragraph 6

---

[2] The lease undeniably obligated Shafer to insure the building and required Shafer to invoice defendants for the cost of such insurance. In its only direct mention of fire damage, the lease obligated Shafer to repair and restore the building in the event of a fire. This language, taken together, logically led defendants to understand, as it does us, that they were not obligated to obtain their own insurance on the building and that they would be the beneficiaries of the insurance Shafer was obligated to procure, and that fire damage specifically was Shafer's responsibility, not their own. The lease pointedly requires defendants to obtain "public liability insurance for the benefit of the landlord," but not fire insurance.

demonstrates the parties' intent to look only to insurance to recover for loss by fire, even when caused by defendants' negligence. Thus, if Shafer cannot seek payment for repairs from defendants, then plaintiff, as Shafer's subrogee, also cannot. See *Auto-Owners Ins Co v Amoco Prod Co*, 468 Mich 53, 59; 658 NW2d 460 (2003) ("It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor[.]"). Because we find that plaintiff is not entitled to damages, we decline to address defendants' other arguments regarding the proper calculation of damages.

## IV. CONCLUSION

The lease does not impose liability on defendants for fire-related damages, and Paragraph 6 of the lease indicates that defendants were entitled to the benefit of Shafer's insurance policy. Therefore, the trial court erred by granting partial summary disposition to plaintiff as to the breach of contract claim. We also find the trial court erred by granting summary disposition to plaintiff as to damages. Accordingly, we reverse the order granting partial summary disposition to plaintiff and denying defendants' motion for summary disposition, and the order granting summary disposition to plaintiff for damages, and remand for entry of summary disposition in favor of defendants.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado